Note.—See under (1) 37 Cyc. pp. 1258, 1268; anno. 24 A. L. R. 331; 26 R. C. L. p. 452; 5 R. C. L. Supp. p. 1413; 6 R. C. L. Supp. p. 1556. (2,3) 37 Cyc. p. 1188.

---

## KENOYER v. BOARD OF EQUALIZATION OF OTTAWA COUNTY.

No. 17210.   Opinion Filed March 6, 1928.

(Syllabus.)

1. **Taxation—Land Subject to Ad Valorem Taxation Though Occupied by Mining Operations Subject to Gross Production Tax Law.**

The present gross production tax law on minerals does not operate to render real estate nontaxable on an ad valorem basis because the surface of the land is occupied by mining operations in the course of the development of the minerals beneath the surface.

2. **Same—Tax Valuation of Land not to be Increased on Account of Mineral Value if Minerals Subject to Gross Production Tax.**

In this state, an added value for the purpose of taxation should not be given land because of actual or prospective minerals beneath the surface, provided the minerals are such as would be subject to the gross production tax when extracted from the earth.

Commissioners' Opinion, Division No. 2.

Error from District Court, Ottawa County; J. J. Smith, Judge.

Appeal by S. A. Kenoyer from the action of the Board of Equalization of Ottawa County in assessing for taxation lands occupied by operating lead and zinc mines. Action of the Board of Equalization sustained by the district court, and Kenoyer, the landowner, appeals. Reversed.

Geo. T. Webster, for plaintiff in error.

A. L. Commons, Co. Atty., and John H. Venable, for defendant in error.

HALL, C. The plaintiff in error is, and has been for several years, the owner of two 40-acre tracts of land in the heart of the lead and zinc mining district in Ottawa county, Okla. At the time this controversy arose each tract of this land was being separately operated by two mining companies under regulation leases for the purpose of producing lead and zinc ore. The production from both tracts averaged the amount of approximately $50,000 a month. All but 17 acres of the 80 acres was utilized by and reduced to possession of the mining concerns as a necessary easement running with the operation for the production of the minerals.

In 1925, this land was assessed to its owner, S. A. Kenoyer, plaintiff in error, who rendered it for assessment at the nominal sum of $125 for each tract, $250 for the entire 80 acres. The tax assessor increased the assessment to $12,000, $6,000 for each 40-acre tract. Plaintiff in error filed his protest before the equalization board, and after his protest was denied by that body, he lodged an appeal therefrom to the district court. The substance of his protest was that the land was not taxable on an ad valorem basis; the basis of this contention being that the major portion of the surface of the land, as well as the substrata, was being utilized for commercial mining purposes, and upon these mineral products a gross production tax was imposed, and that the 17 acres, not already reduced to possession, had but little surface value for the reason that this particular remaining parcel of land was likely to be taken at any time by the mine operators as an easement to the mining enterprises.

Plaintiff in error concedes that he rented a portion of the 17 acres for building sites, for miners' shacks, the shacks being the property of the mine workers. These building sites each were rented for $1 a month.

The district court sustained the action of the equalization board in assessing the land, and also the sum at which it was assessed. The principal contention of plaintiff in error, the landowner, is that these tracts of land are not separately taxable because a considerable portion thereof is being used for intensive mining operations, and that an enormous amount of taxes on minerals de-

rived from this land are paid the state and its municipalities by means of the gross production tax, and that this tax is in lieu of the ad valorem land tax as well as that of the tax otherwise which would be assessed against the minerals when separated from the land.

It is the main contention of defendant in error, the board of equalization, that the land is assessable and taxable on an ad valorem basis, and that the value for taxation is to be determined by its mineral value, as well as any other factor adding to the value of the land.

The main question to be determined is whether or not in assessing land in this state an added valuation is to be placed thereon by reason of its known or prospective mineral contents, such as are subject to the gross production tax after the mineral has been extracted from the earth. Other issues subordinate to this main proposition are presented, one of which is whether or not, under the circumstances enumerated and the facts in this case, the land is assessable and taxable on an ad valorem basis.

Section 9814, C. O. S. 1921, which section incorporates the gross production tax law on minerals, does not operate to render land nonassessable and nontaxable on an ad valorem basis because a portion or all thereof is subjected to mining operations, even though minerals are produced therefrom in enormous paying quantities, and on which a gross production tax is levied and collected.

We fully appreciate that under ordinary conditions the surface of the land containing the actual site of a mine has but little value; but, nevertheless, it has some actual or potential value, just as land consisting mostly of sandy waste or craigs has some actual value, and is taxable, even though the value may be but a nominal sum. Furthermore, it having been expressly provided that all land is taxable on an ad valorem basis, that statute must govern unless by some other act of the Legislature it clearly appears that another method of taxation has been substituted. The provision relative to the taxation of land and the gross production tax law, by providing that "any interest in the land other than that herein enumerated" shall be taxed, indicates an intention on the part of the Legislature not to disturb the law relative to the taxation of the surface of the land, but only to provide an exclusive method of taxation of the minerals in the soil or beneath the surface.

The land is separately assessable and taxable, but in determining its value for taxation purposes, the mineral contents—actual or prospective—are to be disregarded. Such undoubtedly was the purpose of the Legislature and the people in enacting the gross production tax law. The gross production tax law operates to lay a tax on the product when it is produced and separated from the land; and its purpose is to reduce to a certainty the taxation of mineral wealth or that species of property. Section 9582, C. O. S. 1921, must be read in connection with the provisions of law, section 9814, supra, levying a tax on the gross production of minerals. The general statute above referred to (section 9582) antedated the gross production tax law, and would be operative as to all of its provisions were it not for the existence of the law taxing mineral products as they are produced.

The statute in express language exempts from taxation on an ad valorem basis the mineral contents in lands, by providing that the gross production tax is to be substituted for all taxation for all royalty interests in the land. It then logically follows that if the royalty interest or mineral rights cannot be taxed when owned by a person or persons not owning the surface, it would be an anomaly to tax these undeveloped minerals when they constitute a part of the freehold or remain the property of the owner of the surface.

It was not the intention of the lawmakers to burden this species of property with additional taxation unless the products remain in storage up to and at a specified time. Likewise, the machinery and equipment for the operation for the production of these minerals are unassessable on an ad valorem basis unless operation ceases for a certain time specified in the statute.

Defendant in error relies upon numerous decisions and general texts on the subject of taxation, to the effect that one of the elements of value for the purpose of taxation of real property is its mineral value in addition to its value for either uses and purposes. The power to tax must be found in the statutes or the local Constitution. It is a subject peculiarly statutory, and fiscal bodies, excise boards, or courts have no authority whatever to lay or levy a tax not expressly provided for in some act of the Legislature or the Constitution. These decisions relied on by the board of equalization, the defendant in error, were based upon statutes not designed to tax minerals upon a gross production basis, and are interpretations of statutes in jurisdictions not having this method of taxation, and, therefore, these

decisions construing local statutes unlike ours are but logical and just in holding that in valuing real property for the purpose of taxation consideration should be given to undeveloped minerals in the land or beneath the surface in such quantities as to enhance the value of the land over its mere surface value. Such was the law of this state prior to the enactment of the gross production tax law in 1916. Re Indian Territory Illuminating Oil Co. (1914) 43 Okla. 307, 142 Pac. 997.

The defendant in error insists that the judgment should not be disturbed because a valuation of $12,000 might have been properly placed on the surface value of the land for commercial or townsite purposes. The evidence does not sustain that contention. All but 17 acres of the 80 acres was occupied by the mine operators as an easement of the mining operations; and it clearly appears that the assessing officers in valuing the land took into consideration the mineral value, or a part of the mineral value of the land, as well as the value exclusive of the minerals contained in the soil.

For the reasons herein stated. the judgment is hereby reversed, with directions to proceed in accordance with the views herein expressed.

BENNETT, TEEHEE, HERR, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.