## CENTRAL COAL & COKE CO. et al. v. CARSELOWAY, County Assessor et al.
### No. 314.

Circuit Court of Appeals, Tenth Circuit.

Dec. 13, 1930.

W. L. Curtis, of Ft. Smith, Ark. (Thos. B. Pryor, of Ft. Smith, Ark., on the brief), for appellants.

Paul O. Simms and Edward H. Brady, both of Vinita, Okl., for appellees.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

The appellants, plaintiffs below, are residents of Missouri. The appellees are the taxing authorities of Craig county, Okl. The plaintiffs own the coal and coal rights underlying certain lands in Craig county; the county assessed these properties for taxes. Not here complaining of the amount of the assessment, but claiming that these properties are not subject to any tax, the plaintiffs filed their bill to enjoin such assessment. An answer was filed; the cause was tried on an agreed statement of facts; the trial court dismissed the bill [40 F.(2d) 540]; the plaintiffs appeal.

The agreed statement discloses that the plaintiffs first acquired options to purchase these coal rights; tested the minerals by drilling; having ascertained thereby the existence and extent of the coal beds, they bought the coal for $35 an acre, taking from the owners warranty deeds conveying to plaintiffs "all coal without reference to quality or quantity in, on, under and about" the described real estate, "together with the right to mine and remove" such coal, and the right to use the surface for such purpose for a stipulated price. The statement discloses that, aside from the preliminary drilling, no mining operations have been carried on, and the surface rights have not been acquired. Plaintiffs have mortgaged these properties. The plaintiffs returned all of these coal rights to Craig county for general taxes in 1924 and 1925; the county assessed them in each succeeding year. The taxes so assessed were paid by plaintiffs except the last half of the 1928 and the 1929 tax. The plaintiffs paid $35 an acre for these rights; they valued them for taxes at $12.50 an acre, and paid taxes on that valuation for four and a half years. In June, 1929, the equalization board increased the assessment to $15 an acre. The plaintiffs then quit paying any tax, and now claim that these properties are not subject to any tax.

It is clear that the plaintiffs own properties of large value, situate in Oklahoma. Their ownership is secure because Oklahoma maintains a stable government. If plaintiffs need not contribute to the maintenance of that government, while enjoying the benefits thereof, some all-sufficient reason should appear.

The plaintiffs' claim of ownership of the mineral estate is sound, for, while there is no statute in Oklahoma authorizing a severance of the mineral estate from the surface, there is none forbidding it, and the right to so sever, by appropriate grant or reservation, has been upheld in every court in which the question has arisen. See 40 C. J. 969,

citing cases from twenty-two jurisdictions, including Dill v. Rockwell, 94 Okl. 25, 220 P. 620, and Barker v. Land Company, 64 Okl. 249, 167 P. 468, L. R. A. 1918A, 487. See, also, Dunlap v. Jackson, 92 Okl. 246, 219 P. 314; 18 R. C. L. 1174. By the deeds of severance, the plaintiffs became the owners of one interest in real estate, and their grantors remained the owners of another interest.

The Oklahoma taxing statutes are comprehensive. Section 9574, C. O. S. 1921, provides that: "All property in this state, whether real or personal, * * * shall be subject to taxation." Section 9959 reiterates this mandate, but excepts certain municipal bonds. Section 9960 provides:

"All taxable property shall be listed and assessed each year at its fair cash value, estimated at the price it would bring at a fair voluntary sale, in the name of the owner thereof on the first day of January of each year."

Section 9582 provides that:

"Real property for the purpose of taxation shall be construed to mean the land itself, and all buildings, structures and improvements or other fixtures of whatsoever kind thereon, and all rights and privileges thereto belonging or in any wise appertaining, and all mines, minerals, quarries and trees on or under the same."

The plaintiffs are the "owners," by warranty deed, of "minerals * * * under the same." Such minerals are a part of "all property in the state." Plaintiffs meet this apparently impregnable legislative mandate by reference to the case of In re Indian Territory Illuminating Oil Company, 43 Okl. 307, 142 P. 997, 1001, which, as far as we can discern, has no bearing on the claim asserted. That case did not involve the question of legislative authority to tax the owner of any mineral; on the contrary, the taxpayer in the cited case was the lessee under an ordinary exploratory oil and gas lease; the opinion described his right as being "a mere lease or license to go upon the premises, search for and, if found, take them [the oil and gas] away." The court held that authority for a tax must find its source in some legislative act, and that there was no warrant, in the Oklahoma statutes, "for levying an ad valorem tax upon an oil and gas lease as such." Furthermore, the cited case dealt with oil and gas, a fugacious mineral, and the property rights therein differ materially from solid minerals. Ohio Oil Company v. Indiana, 177 U. S. 190, 20 S. Ct. 576, 44 L.

Ed. 729. Plaintiffs rely principally upon two sentences in the opinion, in one of which the court, arguendo, stated that the Legislature had not provided for a severance of the various interests in real property for taxation purposes; and in the other stated that oil and gas must be taxed to the owner of the land. But language in opinions, like language in contracts and statutes, must be read with its context. The court was confronted with the single question of whether the statutes authorized an ad valorem tax on the interest of a lessee under an oil and gas lease. The decision does not bear at all upon the power to tax one who is the owner, by warranty deed, of coal in place. On the contrary, the opinion states, obiter, that under the Oklahoma statutes "the wealth produced by the oil industry, the production of oil, the capital invested in its production, the oil on hand, and the oil in place are taxed."

Other cases relied upon by plaintiffs are even less in point. There is, on the other hand, pertinent and satisfactory authority supporting the claim of defendants. Under statutes practically identical, the Court of Civil Appeals of Texas sustained the power to tax minerals, the ownership of which had been severed. State v. Downman, 134 S. W. 787. The Supreme Court of Texas denied a writ of error, and the Supreme Court of the United States held no constitutional right was denied the owner of the minerals. Downman v. Texas, 231 U. S. 353, 34 S. Ct. 62, 58 L. Ed. 264. In the latter case the Supreme Court said, at page 357 of 231 U. S., 34 S. Ct. 62, 63:

"Usually real estate is taxed as a unit; but as different elements of the land are capable of being severed and separately owned, the statute may authorize a separate assessment against the owners of the severed parts. Accordingly, if the title has been severed, land may be taxed to one, timber to another, or land to one and coal to another. The state court held that such was the law of Texas, in view of the general language of the statute defining real estate as including not only the land itself, but the buildings on the land and the minerals under the land."

To the same effect see Consolidated Coal Co. v. Baker, 135 Ill. 545, 26 N. E. 651, 12 L. R. A. 247; People v. Board of Assessors, 93 N. Y. 308; Peterson v. Hall, 57 W. Va. 535, 50 S. E. 603. In his excellent work on Taxation, Judge Cooley states:

"Sometimes one person owns or holds the surface rights of land while another owns or holds the mineral rights. This may result

from a deed, lease, or other transfer of greater or less rights. In such a case, the question arises as to whether the holder or owner of the mineral rights can be separately taxed because of such interest. Sometimes such taxation is expressly provided for by statute, but even where not so provided, it is generally held that the separate mineral interest, where transferred, is independently taxable as real estate, and payment of a tax on the land does not preclude a tax against another person on a mining right in such land. This separate ownership of mineral interests, so as to be taxable, may result from a reservation to the grantor of the mineral interests, on conveying the land as well as from a conveyance by the owner of the surface to another of the minerals." Cooley on Taxation (4th Ed.) vol. 2, par. 566.

The plaintiffs own the coal in question; it cannot be taxed to the owner of the surface, because he does not own it, any more than the plaintiffs can be taxed for the surface which they do not own. Either this valuable property must be taxed to plaintiffs or not be taxed at all. And, if the mineral estate is exempt from tax because the taxing statutes are silent as to severed estates, why not the surface? No reason appears why one interest, the surface, should be taxed, and the other, the coal, should escape. The truth is that, if the contention of plaintiffs is sound, all interests in real estate, the surface, the minerals, the improvements, are automatically exempted from any taxation the moment a severance of the interests therein occurs, either by grant or reservation, for there is no more statutory authority for taxing the surface estate, after severance, than there is the mineral estate, after severance. We cannot read either the Oklahoma statutes or decisions to mean that real estate can be exempted from any taxation by the simple expedient of a severance of the estates therein.

The decision of the trial court was right, and is affirmed.