MITCHAM et al. v. BOWERS et al.

No. 32031. Nov. 25, 1947.

Rehearing Denied Dec. 16, 1947.

Second Petition for Rehearing Denied Jan. 13, 1948.

*188 P. 2d 363.*

E. Moore, of Coalgate, for plaintiffs in error.

G. T. Ralls, of Coalgate, for defendants in error.

CARVER, SPECIAL J. The plaintiffs, on January 26, 1944, filed their petition in the district court of Coal county to quiet title to the coal and asphalt lying under all of the town of Lehigh, except blocks 11, 12, 17 and 18; and alleged that they obtained title thereto by a deed from Folsom, Morris Coal & Mining Company, dated November 28, 1942, which is of record in the office of the county clerk of said county; that said Folsom, Morris Coal & Mining Company had previously purchased said coal and asphalt from the Choctaw-Chickasaw Tribes of Indians with the approval of the Secretary of the Interior; and that they are the owners of the coal and asphalt lying under said property with the right of ingress and egress thereto as provided in the original conveyances from said tribes of Indians. The defendants each filed separate answers in which they interpose general denials and allege that each of them is the owner of certain lands involved herein, describing them, and that they purchased such lands at the 1940 resale, and received deed from the county treasurer therefor, and thereby became the owners of the entire interest in and to the lands involved in this action, including the coal and asphalt underlying the same.

The case was tried upon an agreed statement of facts which were reduced to writing and filed in the case, together with certain records of the assessor and treasurer of the county.

The stipulation and records before us disclose the following facts:

That the land involved is a part of what is known as segregated coal lands and was not offered to the members of the tribes for allotment; that the lots in the town of Lehigh were sold to individuals and the coal and asphalt was reserved from such sales; that later an Act of Congress permitted the sale of the coal and asphalt, and that Folsom, Morris Coal & Mining Company purchased the coal and asphalt in and under the town of Lehigh and received patents therefor about 1924, and held the same until November 28, 1942, when plaintiffs purchased the coal and asphalt involved in this appeal; and that said company also purchased a large part of the lots in the town of Lehigh, as shown by the pleadings and stipulation herein.

That the said Folsom, Morris Coal & Mining Company for the year 1931, and all prior years during its ownership, assessed the lots it owned and the coal and asphalt separately and paid the taxes on such separate assessments; that after the year 1931 it neither assessed its property nor paid the taxes on the same, but that said property was assessed on the records of the assessor for the years 1931 to 1940, separately as before—that is, the coal and asphalt was assessed separately from the surface interests; and that the notice of sale of said property for the 1940 resale included only the amount of the taxes based on the assessments against the surface and did not include the taxes for the coal and asphalt, al-

though they were delinquent the same as the other taxes.

That the notice of sale described the property in general terms and did not show that the assessments and delinquent taxes on the coal and asphalt were not included in the delinquent taxes listed.

That the resale tax deeds through which the defendants claim to own the coal and asphalt were based on the 1937 original sale for prior delinquent taxes; that the resale tax deeds are in proper form and that the notices of both the original sale and resale for delinquent taxes were given for the length of time and in the form and manner prescribed by law.

That, since statehood, it has been the custom of many taxpayers in making their· assessments to the county assessor of Coal county to list the coal and asphalt interests separate from the surface rights, even when both estates are owned by the same party.

The patents to Folsom, Morris Coal & Mining Company described the properties by section, township and range, and not by lots and blocks of the town of Lehigh. The deeds to the plaintiffs describe the property in lots and blocks, but state that it is the intent of the grantor that the area in any block to which the underlying coal and asphalt is conveyed shall be construed to include to the center line of the boundary street or streets and likewise to include alleys to the same extent. The resale tax deeds describe the property by lots and blocks as platted.

The trial court rendered judgment in favor of the plaintiffs, quieting their title to the coal and asphalt under all the property involved except that part of it where the Folsom, Morris Coal & Mining Company owned the surface in addition to the coal and asphalt at the time of the resale, and on this part of the property involved judgment was rendered in favor of the defendants, determining that their title was in fee simple and included also the coal and asphalt lying thereunder. From this part of the judgment, the plaintiffs have perfected their appeal to this court.

The plaintiffs make four assignments of error, as follows:

"1. That the re-sale of the premises in 1940, herein involved, is void insofar as it affects the coal and asphalt, in and under the land, because the same had been specially assessed for taxes, and the re-sale and all proceedings thereto were based on the general ad valorem assessment.

"2. That the county treasurer could not legally sell at re-sale any lands or any interests therein on which it had not previously had a tax lien.

"3. That since the general public considered the surface of segregated coal land, and the coal and asphalt thereunder, as two separate estates, the sale of said interests could not legally be made unless it was based on both of said assessments, and the notices of sale and the levies thereof specifying separate interests to be sold.

"4. That the judgment of the trial court was contrary to the law and the evidence pertaining to said case."

Plaintiffs concede that the Legislature has made no provision for the separate taxation of mineral interest in land from the fee title thereof. They also concede that it is the established rule of this court that, where minerals beneath the surface of the land have not been developed and production thereof had, a sale of the land for delinquent ad valorem taxes extinguishes any mineral interest which may be outstanding therein. State v. Shamblin, 185 Okla. 126, 90 P. 2d 1053; State v. Kirchner, 185 Okla. 129, 90 P. 2d 1055; Secrest v. Williams, 185 Okla. 449, 94 P. 2d 252. They also admit the rule announced in the case of McNaughton v. Beattie, 181 Okla. 603, 75 P. 2d 400, and Meriwether v. Lovett, 166 Okla. 73, 26 P. 2d 200, holding that where there has been production of oil and gas under a valid mineral lease and gross produc-

tion tax has been paid thereon, a sale of the lands for ad valorem taxes does not affect this mineral interest.

It is argued, however, that coal and asphalt are of different properties and qualities from oil and gas, that they are permanently situated beneath the surface and are not fugacious; that their quantity, value and cost of production can be fairly and accurately estimated, and that the rule which applies to oil and gas should not be applied to deposits of coal and asphalt.

Plaintiffs also contend that since statehood it has been the custom of the assessors of counties where coal and asphalt deposits are known to exist to assess the coal and asphalt separate and apart from the other ownership of such properties. This rule has been followed by the assessors of Coal county, even when the coal and asphalt has been owned by the same parties owning the other estates in such property. The trial judge sustained the title of the plaintiffs to the coal and asphalt underlying all the property except that part in which the Folsom, Morris Coal & Mining Company owned both the surface and the coal and asphalt lying thereunder. He evidently considered that the separate estates when owned by the same party could not be assessed separately. The defendants contend that the said company abandoned its property in 1931 and that the estates therein could not be separately assessed unless requested by the owner of the property. We cannot agree that this would make any difference. It is agreed that the taxes for which the property was sold covered only the fee title less the coal and asphalt, and that the assessments and taxes for the coal and asphalt were not included in the notice of sale and sale proceedings.

The statute authorizing the assessment of property is found in 68 O.S. 1941 §15.1, and is as follows:

"Property subject to Taxation — All property in this State whether real or personal, . . . shall be subject to ad valorem taxation."

Real property is defined in 68 O. S. 1941 §15.3:

"Real property, for the purpose of ad valorem taxation, shall be construed to mean the land itself, and all rights and privileges thereunto belonging or in any wise appertaining and all mines, minerals, quarries and trees on or under the same, . . . "

The coal and asphalt underlying the land is capable of being estimated in quantity and value and before removal is part of the real estate. It is contended that there is no statutory authority for separate assessments. However, there is no provision of the statutes of Oklahoma prohibiting the assessment for taxation against the divided interests in real estate. In the case of Central Coal & Coke Co. et al. v. Carselowey, County Assessor, 40 F. 2d 540, the District Court, in a case from Oklahoma, held that coal underlying land is taxable as real property and that the interest of owners of coal and coal rights under certain lands could be severally assessed for taxation at fair ascertainable market value. The matter was again before the Circuit Court of Appeals in a case styled the same as the above, found in 45 F. 2d 744, and it sustains the same principle. These cases are sound in principle and fairly state the law on the question of separate assessments. See, also, 61 C. J. 180; 26 R.C.L. 360.

It is fundamental that the purchaser of property at a resale acquires only a fee-simple title to the property actually covered by the assessments for the taxes for which the property was sold. It is agreed that the separate estates were separately assessed for the period from 1931 to 1940, the year of the sale, and the sale proceedings did not include the taxes listed against the coal and asphalt. The lien of the county for taxes for which the property was sold did not cover the coal and asphalt and therefore did not cancel the taxes.

listed against this estate. The purchasers at the resale could not acquire a larger estate in the property than that covered by the lien of the taxes for which the land was sold. Since the lien of the county for the delinquent taxes for which the property was sold did not cover the coal and asphalt, the defendants acquired no interest therein and the coal and asphalt is still liable for the taxes listed against it.

The judgment is reversed, with directions to render judgment for the plaintiffs.

DAVISON, V.C.J., having certified his disqualification, Hon. H. W. CARVER of Wewoka was appointed Special Justice to serve in his stead.

HURST, C.J., and BAYLESS, WELCH, GIBSON, and LUTTRELL, JJ., concur. RILEY, CORN, and ARNOLD, JJ., dissent.

---

CORN, J. (dissenting). The assessment of land for taxes under statutory provision relates to the land itself rather than the character of ownership.

There is no specific authority of law to authorize an assessment of the surface of land separate and apart from the minerals or mines under the same. In fact, the statute specifies that real property, for the purpose of ad valorem taxes, shall include "mines, minerals, quarries, and trees on or under the same." 68 O. S. 1941 §15.3. The whole of the estate considered in the case at bar was liable for taxes. It was assessed for taxes and the taxes became delinquent. The mere fact that the advertisement for tax sale and the sale was for the delinquency in payment of taxes assessed against the surface, did not defeat the power to sell. The sale for a lesser amount than the sum total of all taxes due and delinquent was a mere irregularity.

The sale for taxes as made, of necessity, carried with it a conveyance of all the constituent elements of the land sold, and especially is this true in view of the unity of ownership. The title to the surface and to the minerals, having merged in the coal company, it was, in fact, the owner and taxpayer whose land was liable for the entire amount of taxes due against it, though the assessment for taxes had been divided arbitrarily.

The plaintiff's acquisition of title from the coal company placed him in no better position than that occupied by his grantor. The judgment should be affirmed.

RILEY and ARNOLD, JJ., concur.