### CORNELIUS v. JACKSON.

No. 32137.   March 9, 1948.
Rehearing Denied Sept. 14, 1948.
Appeal Dismissed Jan. 10, 1949.
See 335 U. S. 906, 69 S. Ct. 412.

*209 P. 2d 166.*

668

Francis Stewart, of Muskogee, for plaintiff in error.

C. J. Davenport, of Sapulpa, for defendant in error.

RILEY, J. Defendant in error, as plaintiff, commenced this action against J. P. Cornelius and Frances E. Green, nee Cornelius, to quiet title to 160 acres of land in Creek county. She deraigned her title by mesne conveyances through a resale tax deed dated May 29, 1941, executed by the county treasurer of Creek county to L. B. Jackson, and recorded. Plaintiff alleged she was in possession of the land; that defendants wrongfully claimed right, title, and interest therein adverse to her.

Summons was issued, directed to the sheriff of Grady county, the praecipe stating defendants' residence to be at 1008 Colorado avenue, Chickasha, Okla. The summons was dated October 2, 1943, and the answer day fixed therein was November 3, 1943. The record does not show return of summons, but on November 3, 1943, defendant Frances E. Green appeared and filed her separate motion to require plaintiff to make her petition more definite and certain.

October 26, 1943, plaintiff filed an affidavit to obtain service by publication as to defendant J. P. Cornelius, alleging "That plaintiff, with due diligence, is unable to make service of summons upon defendant J. P. Cornelius within the State of Oklahoma, and that the present residence or place of business of said defendant is

unknown to the plaintiff and cannot be ascertained by any means within her control, and that the last known place of his residence was 1008 Colorado, Chickasha, Oklahoma". Notice by publication was issued, and the answer day was therein fixed on December 9, 1943. Publication was made; proof of publication and affidavit of mailing copy of the petition together with copy of the publication to defendant J. P. Cornelius within six days after the first publication were filed.

On December 8, 1943, defendant J. P. Cornelius, by attorney, filed a special appearance and motion to quash the service of summons, alleging that "this defendant is a resident of the State of Oklahoma and has been for many months long past and could be served by summons in said cause in the same manner as other residents of the state . . ." The motion was verified by Ira E. Cornelius; the affidavit of verification states that "J. P. Cornelius is a resident of the State of Oklahoma; . . . he does not reside in Chickasha, Oklahoma; . . . there was delivered to the undersigned a purported notice by publication in the above matter but . . . J. P. Cornelius does not reside with the undersigned and has not so resided for a period of time running back long before the filing of this cause; . . . J. P. Cornelius is a Major in the United States Army but affiant cannot at this time divulge the postoffice address of said defendant".

Verified response was filed to the motion to quash, setting out what efforts plaintiff had made to obtain personal service of summons on defendant J. P. Cornelius within the state.

The court overruled the motion to quash and J. P. Cornelius, as a defendant, filed his separate answer. Plaintiff demurred to the answer. Pending hearing on the demurrer, defendant Cornelius, by and through his father, Ira E. Cornelius, filed a motion to have the matter held in abeyance under provisions of the Soldiers' and Sailors' Civil Relief Act.

The application to hold in abeyance was denied. Plaintiff's demurrer to defendant Cornelius' answer was sustained, and the court entered judgment for plaintiff quieting her title.

After defendant Frances E. Green's motion to make more definite and certain was overruled, she filed her separate answer. Plaintiff's demurrer thereto was sustained and judgment quieted plaintiff's title as against that defendant.

Defendant Cornelius has appealed; defendant Frances E. Green has filed her separate cross-petition in error, but has failed to file brief or excuse her failure. Her cross-petition in error is treated as abandoned and is dismissed.

Cornelius resents three issues: (1) error in overruling the special appearance and motion to quash; (2) error in overruling defendant's motion to hold in abeyance; (3) error in sustaining plaintiff's demurrer to answer of defendant Cornelius. We consider the questions in the above order.

The motion to quash was submitted to the court on the affidavit to obtain service by publication, the verified motion to quash and the verified response. No testimony was taken. The affidavit to obtain service by publication is sufficient in form. The motion to quash is in effect a verified denial of the truth of the statements made in the affidavit to obtain service by publication. The response consists of a verified statement of what was actually done by plaintiff to ascertain the residence of said defendant and his whereabouts. It states, in substance, that neither the plaintiff nor her attorney knew defendant Cornelius nor had any knowledge of his whereabouts except that as early as March 9, 1943, nearly seven months before the action was commenced, plaintiff's attorney, after learning from an attorney at Muskogee that Ira E. Cornelius was the father of J. P. Cornelius and that his residence at that time was Pruitt, Arkansas, wrote said Ira E. Cornelius ad-

vising him of the proposed action and requesting information as to the place of residence of J. P. Cornelius; that on March 26, 1943, Ira E. Cornelius answered to the effect that J. P. Cornelius was his son, owned the mineral rights in the land, and was in the military service and had been since September, 1940. No information was given as to the marital status of J. P. Cornelius or his place of residence, if any, other than that of the father. Later plaintiff's attorney, being otherwise advised that the actual residence of said Ira E. Cornelius was Chickasha, Oklahoma, on May 11, 1943, wrote Honorable Frank M. Bailey at Chickasha, requesting information as to the matter and particularly as to the address of Frances E. Green. On May 14, 1943, Honorable Frank M. Bailey answered stating that he found none of the Cornelius family in Chickasha at that time and that he had not ascertained the address of Frances E. Green, but that another daughter of Ira E. Cornelius was married to a man named Martin who resided in Oklahoma City, but that he could not get the address; that the older sons were in the army and that Mr. Ira E. Cornelius was probably then in Arkansas; that it was upon this information the affidavit to obtain service by publication was made and the copy of the petition and notice were mailed to J. P. Cornelius at Chickasha, which, as was disclosed by the affidavit and motion to quash, were received and receipted f o r by Ira E. Cornelius; that the first and only information plaintiff or her attorney had indicating that J. P. Cornelius had a marital status or residence at Ardmore, Okla., was a letter written by Mr. Stewart (attorney for defendant Cornelius); that immediately thereafter and after publication was complete, plaintiff, preferring personal service if the same could be had, caused the issuance of summons for J. P. Cornelius, directed to the sheriff of Carter county, which was transmitted to said sheriff together with information touching the military service of said defendant and his alleged residence in Ardmore and the possible opportunity of delivery of the summons to a member of his family if said defendant was not found in person. That summons was returned "not found". These statements were uncontradicted.

It may be noted that Ira E. Cornelius, after learning of the proposed suit in March, 1943, had communicated with the parties interested and thereafter he apparently studiously avoided giving any information as to the place of residence of either of the defendants, both of whom were his children. The record as a whole thoroughly demonstrates the truth of the statements made in the affidavit to obtain service upon defendant Cornelius. There was no error in overruling the motion to quash.

The Soldiers' and Sailors' Civil Relief Act of 1940, §201, 50 U. S. C. A. App. §521, provides:

"At any stage thereof any action or proceeding in any court in which a person in military service is involved, either as plaintiff or defendant, during the period of such service or within sixty days thereafter may, in the discretion of the court in which it is pending, on its own motion, and shall, on application to it by such person or some person on his behalf, be stayed as provided by this Act, unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service."

Hearing was had on the application to hold in abeyance as to whether the ability of defendant Cornelius to conduct his defense was materially affected by reason of his military service. Mr. Francis Stewart, attorney for defendants, was called as a witness on behalf of plaintiff and testified that he had been a practicing attorney in Oklahoma for 30 years or more; that he was familiar with the pleadings in the cause; that he knew the basis of plaintiff's claim; that he was familiar with the answer filed by defendant;

that he knew the nature of the defense; that there was no question of fact involved and that the questions involved were questions of law, first, whether the law authorizes the assessment of mineral rights in land where separately owned, along with the surface rights, and a sale of both for delinquent taxes, and, second, if the statute does authorize such assessment, levy, and sale, whether such law would deny the owner of the mineral rights equal protection of the law and operate so as to deprive the owner of the mineral rights of the equal protection of the law and deprive him of his property without due process of law; that he was employed to protect the rights of J. P. Cornelius by his father, Ira E. Cornelius; that J. P. Cornelius is not a lawyer and so far as any legal matter is concerned, he could be of no assistance in the defense of the action.

Upon the record and that testimony, the court found that the presence of said defendant was not necessary for the full adjudication of the questions raised by the pleadings. This was, in effect, a holding that in the opinion of the court the ability of the defendant Cornelius to conduct his defense was not materially affected by his military service. The record fully sustains the holding and there was no error in overruling the motion to stay proceedings.

As to the order sustaining plaintiff's demurrer to answer of defendant Cornelius, that answer, after asserting want of jurisdiction of that defendant because of his military service and the method of obtaining service by publication upon him, attacks the validity of the resale tax deed under which plaintiff claims, upon one ground, namely, that under the resale tax deed the mineral and oil and gas rights separately owned by defendant Cornelius were not and could not be included in an assessment and taxes could not be levied against the land as a whole, in the name of Frances E. Green who owned only the surface rights, and that to hold the resale tax deed valid as to the mineral rights owned by defendant would be to deny said defendant equal protection of the law and deprive him of his property without due process of law.

Defendant cites Cuff v. Koslosky, 165 Okla. 135, 25 P. 2d 290, as holding that an owner of land may convey, except, or reserve his right to the oil and gas beneath it and that this private property right is a proper subject of sale, and that there is a distinct difference between an oil and gas mining lease and a mineral deed.

That opinion indicates, however, that the principal difference is in their duration, a lease being limited as to duration while a mineral deed fixes a permanent present interest in the mineral estate and that the real rights granted, except as to the period of duration, are very similar. By their usual provisions, both permit the grantee or his lessee, as the case may be, the right of ingress and egress to and from the premises for the purpose of exploring and drilling wells and then, if oil or gas is discovered, the right to use so much of the surface of the land as may be necessary to reduce the oil and gas to possession.

Under either oil and gas lease or mineral deed, no title to the oil and gas obtains until same has been captured. A mineral deed amounts to a separate estate and, as such, is such an interest in land as to come within the provisions of section 703, C. O. S. 1921, under the classification of lands and tenements. In other words, it is lands and tenements so as to require appraisement before sale thereof upon execution and levy.

Under that opinion and the authorities cited therein, we are committed to the rule that a conveyance of the oil and gas and other mineral rights in and under land is a conveyance of an interest in the land itself and creates a separate estate therein. See, also, Martin v. Atkinson, 195 Okla. 19, 154 P. 2d 945.

Therefore, defendant Cornelius was an owner of an interest. in the land when. ad valorem taxes were levied thereon after 1932. But it does not follow. that there was such an interest as may be assessed and taxed separately from the land itself. The converse is true as to nonproducing mineral interest in land with which we are dealing.

Section 12331, O. S. 1931, in effect until repealed May 23, 1941 (S. L. 1941, p. 332) provided:

"Real property for the purpose of taxation shall be construed to mean the land itself, and all buildings, structures and improvements or other fixtures of whatsoever kind thereon, and all rights and privileges thereto belonging or in any wise appertaining, and all mines, minerals, quarries and trees on or under the same."

It is now well settled that the adverse interests which may be held in realty are not separable for the purpose of taxation. State v. Shamblin, 185 Okla. 126, 90 P. 2d 1053; State v. Kirchner, 185 Okla. 129, 90 P. 2d 1055.

In Secrest v. Williams, 185 Okla. 449, 94 P. 2d 252, it is held:

"'Oil and gas, while lying in the strata of earth from which they are produced, must be taxed as real property to the owner of the land, if the land is taxable, under which for the time being they may lie."

"A valid tax deed conveys to the purchaser the entire interest and estate in the land, including the mineral rights, whether severed or not, and extinguishes all the rights of the owner or owners of the land and of the mineral rights of any interest or estate therein."

In Smith v. Anderson, 196 Okla. 26, 162 P. 2d 178, we held:

"Real property, for the purpose of taxation, means the land itself inclusive of minerals that may be produced therefrom."

"An assessment for taxes for the year 1929 of owner's undivided interest in tract of land, without regard to separate ownership of mineral interest, limited to less than the whole tract of land, is a valid assessment."

In Oklahoma the statutory method of assessment of land for ad valorem taxes is in rem. In Cooley on Taxation, vol. 3 (4th Ed.) §1492, the following rule is stated:

"The Legislature has power to provide either that the tax sale shall create a new title cutting off all prior liens and incumbrances and interests, or to provide that the tax purchaser shall acquire the interest only of the person in whose name the land was assessed or of the real owner."

Our statute, 68 O. S. 1941 §432f, provides that the issuance of a resale tax deed shall vest in the grantee an absolute perfect title in fee simple to the land conveyed. See Taylor et al. v. Lawrence, 176 Okla. 75, 54 P. 2d 634.

Under the statutes, and decisions of this court, the resale tax deed being otherwise valid, all the right, title, and interest defendant Cornelius had by virtue of his mineral deed passed to the purchaser under the resale tax deed. The contention that said defendant was deprived of equal protection of the law or was deprived of his property without due process of law cannot be sustained.

In Paddell v. New York, 211 U. S. 446, 53 L. Ed. 275, it is said:

"And it may perhaps be doubted whether there is even a logical objection to the sovereign power giving notice to all persons who may acquire property within its domain that, when it comes to tax, it will not look beyond the tangible thing, and that those who buy it must buy it subject to that risk; . . . Of course, there is no question of allowances or deductions upon a proceeding in rem. All interests are proceeded against at once."

In Leigh v. Green, 193 U. S. 79, 48 L. Ed. 623, in discussing proceedings for sale of land for taxes, the court said:

"Proceedings of this nature are not usually proceedings against parties; nor, in the case of lands or interests in lands belonging to persons unknown, can they be. They are proceedings which have regard to the land itself rather than to the owners of the land; and if the owners are named in the proceedings, and personal notice is provided for, it is rather from tenderness to their interests, and in order to make sure that the opportunity for a hearing shall not be lost to them, than from any necessity that the case shall assume that form. . . .

"The principles applicable which may be deduced from the authorities we think lead to this result: Where the state seeks directly or by authorization to others to sell land for taxes upon proceedings to enforce a lien for the payment thereof, it may proceed directly against the land within the jurisdiction of the court, and a notice which permits all interested, who are 'so minded', to ascertain that it is to be subjected to sale to answer for taxes, and to appear and be heard, whether to be found within the jurisdiction or not, is due process of law within the 14th Amendment to the Constitution."

"In the case under consideration the notice was sufficiently clear as to the lands to be sold; the lienholders investigating the title could readily have seen in the public records that the taxes were unpaid and a lien outstanding, which, after two years, might be foreclosed and the lands sold and, by the laws of the state, an indefeasible title given to the purchaser. Such lienholder had the right for two years to redeem, or, had he appeared in the foreclosure case, to set up his rights in the land."

68 O. S. 1941 §433a provides that upon sale of land to the county and resale by the county, the owner of record, or any person having an interest therein, may redeem the land at any time before the resale tax deed is issued by the county treasurer. Thereunder, and under the rule stated in Cochran v. Godard, 182 Okla. 506, 78 P. 2d 692, defendant Cornelius had the right at any time before the resale tax deed was issued, to redeem the land

to protect his interest and had the right to assert and enforce a lien therefor as against the owner of the surface rights, whose duty it was in the first instance to pay the taxes. By the tax proceeding herein, defendant was not denied equal protection of the law and was not deprived of his property without due process of law.

Affirmed.

HURST, C. J., DAVISON, V. C. J., and BAYLESS, WELCH, CORN, and LUTTRELL, JJ., concur. ARNOLD, J., dissents.