**B.H. ADDISON, Appellant,**

v.

**J. Ben GOODIN, County Treasurer of LeFlore County, and Jo Ann Boydston, Appellees.**

**No. 61154.**

Supreme Court of Oklahoma.

Jan. 13, 1987.

Hamilton & Warren, Inc. by James E. Hamilton, Poteau, for appellant.

Gary E. Negen, Asst. Dist. Atty., Wilburton, for appellee, J. Ben Goodin, County Treasurer of LeFlore County.

LAVENDER, Justice:

In 1958 the severed mineral interests underlying a certain quarter section of land in LeFlore County were voluntarily placed on the ad valorem tax rolls. Taxes on this interest were paid on this basis until 1973. In 1980 the County Treasurer of LeFlore County declared the taxes on this interest to be delinquent and offered the mineral estate at tax sale. Appellant B.H. Addison purchased the certificate of tax sale covering this interest.[1]

Shortly before the two year holding period on the certificate had passed,[2] appellant was informed that Jo Ann Boydston was attempting to redeem the certificate by paying the taxes declared delinquent. Appellant then initiated the present action to enjoin Boydston from attempting to redeem the certificate. Appellant also sought an injunction, or, in the alternative, a writ of mandamus, to require the county treasurer to recognize the validity of appellant's claim and to cooperate in the issuance of a tax deed.

Default judgment was entered against Boydston and that ruling is not challenged

---

1. It appears that the taxes on the surface estate in this quarter section have at all times been kept current.

2. See 68 O.S.1981 § 24323(a).

here. However, the trial court also ruled that Oklahoma law did not provide for the assessment of a nonproducing mineral estate separate from the surface estate, and that the voluntary assessments did not justify the subsequent determination of delinquency. As there were no taxes legally due on the estate, the sale was invalid and any interest claimed thereunder void.[3] The trial court thus refused to require appellee county treasurer to recognize the validity of appellant's claim. Appellant now challenges that ruling.

Appellant argues that the case of *Mitcham v. Bowers*[4] requires the finding that sale of the minerals for delinquent taxes was proper. In *Mitcham* a mining company had voluntarily placed its interests in coal and asphalt underlying the town of Lehigh, Oklahoma on the ad valorem tax rolls. The company's assessments of these mineral interests were made separately from assessments of surface interests owned by the company. The company ceased paying assessments on both surface and minerals at the same time. A sale for delinquent taxes was subsequently held at which the property was offered for the taxes listed against the surface. The plaintiffs in that action had purchased the coal and asphalt rights from the original mining company. Plaintiffs sought to quiet their title in the minerals as against those claiming under the tax resale deeds. This Court held that since the property was only sold for the taxes listed against the surface no interest in the coal and asphalt had been conveyed under the tax deeds. The opinion concluded that the coal and asphalt interests were still liable for the taxes listed against them.

Appellant is correct in arguing that *Mitcham* supports his proposition that a voluntary assessment of a severed mineral interest might subject that interest to a continu-

ing tax obligation, which might, arguably, be declared delinquent if the obligation were allowed to lapse. Upon review, however, it appears that *Mitcham*, a case never subsequently cited by this Court, presented an aberrational statement of Oklahoma law on this point.

The holding in *Mitcham* was reached upon the basis of the adoption of the reasoning of *Central Coal & Coke Co. v. Carselowey*,[5] in which the federal courts attempted to anticipate Oklahoma's treatment of the ad valorem taxation of mineral interests. *Central Coal* dealt with interests in coal for which a mining company had initially voluntarily entered assessments. However, the mining company later challenged the payment of taxes when the county equalization board moved to increase the valuations on the coal rights. The mining company then claimed that such interests were not subject to such tax.

The federal district court decided *Central Coal* on the basis of the application of a general ad valorem taxation statute from the state of Texas, which it found to be nearly identical to the Oklahoma statute. It appears that Texas, under the statute, taxed minerals and mineral rights separately from the surface of the land. Thus, reasoned the federal courts, Oklahoma should also assess and tax minerals separately from the surface estate when the interests are severed.[6] Oklahoma, however, has not interpreted our ad valorem taxation provisions in this way. The basis for our interpretation regarding mineral interests has been the statutory provisions relating to the taxation of minerals on their production. The interpretation of these provisions, which is quite contrary to that espoused in the *Central Coal* cases, was clearly stated in *Kenoyer v. Board of Equalization:*[7]

3. See *Almon v. Champion International Corp.*, 349 So.2d 15, 17 (Ala.1977).

4. 199 Okl. 558, 188 P.2d 363 (1947).

5. 40 F.2d 540 (N.D. Okla.1930), affirmed 45 F.2d 744 (10th Cir.1930).

6. The reasoning of the federal courts on this point might have resulted in a greater consonance with Oklahoma law had the holding been specifically limited to interests in coal. Oklahoma's use of an "in lieu of" system of gross production taxation on minerals has been the basis for our practice of not valuing mineral interests separately from the surface. See *Ke-*

*noyer v. Board of Equalization*, 130 Okl. 3, 264 P. 891 (1928). Prior to 1915 coal was included as a mineral subject to the gross production tax. Compare 1915 Okla.Sess.Laws, Ch. 107, Art. 2, subd. A, § 1, with Revised Laws of Oklahoma 1910 § 7464. (The 1915 amendment was apparently in response to the court's holding in *Missouri, K. & T. Ry. v. Meyer*, 204 Fed. 140 [W.D. Okla.1913], which stated that the tax as to the railroad's coal production interfered with a federal agency through which the railroad had leased the coal property.)

7. 264 P. at 892.

The land is separately assessable and taxable, but, in determining its value for taxation purposes, the mineral contents—actual or prospective—are to be disregarded. Such undoubtedly was the purpose of the Legislature and the people in enacting the gross production tax law. The gross production tax law operates to lay a tax on the product when it is produced and separated from the land; and its purpose is to reduce to a certainty the taxation of mineral wealth or that species of property. Section 9582, Comp. Okl.Stat.1921, must be read in connection with the provisions of law (section 9814, supra) levying a tax on the gross production of minerals. The general statute above referred to (section 9852) antedated the gross production tax law, and would be operative as to all of its provisions were it not for the existence of the law taxing mineral products as they are produced.

The statute in express language exempts from taxation on an ad valorem basis the mineral contents in lands by providing that the gross production tax is to be substituted for all taxation for all royalty interests in the land. It then logically follows that, if the royalty interest or mineral rights cannot be taxed when owned by a person or persons not owning the surface, it would be an anomaly to tax these undeveloped minerals when they constitute a part of the freehold or remain the property of the owner of the surface.

It was not the intention of the lawmakers to burden this species of property with additional taxation, unless the products remain in storage up to and at a specified time. Likewise the machinery and equipment for the operation for the production of these minerals are unassessable on an ad valorem basis, unless operation ceases for a certain time specified in the statute.

Defendant in error relies upon numerous decisions and general texts on the subject of taxation, to the effect that one of the elements of value for the purpose of taxation of real property is its mineral value, in addition to its value for other uses and purposes. The power to tax must be found in the statutes or the local Constitution. It is a subject peculiarly statutory, and fiscal bodies, excise boards or courts have no authority whatever to lay or levy a tax not expressly provided for in some act of the Legislature or the Constitution. These decisions relied on by the board of equalization, the defendant in error, were based upon statutes not designed to tax minerals upon a gross production basis, and are interpretations of statutes in jurisdictions not having this method of taxation, and therefore these decisions construing local statutes unlike ours are but logical and just in holding that in valuing real property, for the purpose of taxation consideration should be given to undeveloped minerals in the land or benath the surface in such quantities as to enhance the value of the land over its mere surface value....

And, in *McNaughton v. Beattie,* we explained: [8]

It must be clearly understood that this separate taxable estate in the mineral rights exists only during the time when production is obtained from the property and gross production tax levied and paid thereon. Although the language in *Kenoyer v. Board of Equalization, etc.,* supra, might indicate that the mineral rights are never subject to ad valorem tax, since they might be subject to gross production tax in the future, such was not the holding of the court. The facts therein disclose that minerals were being produced and a gross production tax was being paid during the period of time in question, and the holding therein must be limited to such facts. It is true that an added value cannot be given to property for its potential mineral wealth, when the minerals are not actually being extracted, because, as stated by Mr. Justice Kane, such would be merely a tax "upon the illimitable vista of hope"; nevertheless, before oil or gas is discovered, or after such production has ceased, the mineral rights are subject to ad valorem tax as real property of the owner of the land. *In re Indian Territory I. Oil Co.,* 1914, 43 Okl. 307, 142 P. 997, 1001.

We have stated that, under our statutory scheme of ad valorem taxation, the various interests which may be held in land may not be separated for the purpose of assessment.[9] And that, in the absence of produc-

8. 181 Okl. 603, 75 P.2d 400, 403 (1937).

9. See *Jenkins v. Frederick,* 208 Okl. 583, 257 P.2d 1058 (1952); *Cornelius v. Jackson,* 201 Okl. 667,

209 P.2d 166 (1948) app. dismissed 335 U.S. 906, 69 S.Ct. 412, 93 L.Ed. 440; *Smith v. Anderson,* 196 Okl. 26, 162 P.2d 178 (1945); *State v. Shumblin,* 185 Okl. 126, 90 P.2d 1053 (1939).

tion, the property's potential of mineral wealth is a part of the taxed surface estate, but that it adds no value in itself to that estate.[10]

The practice of entering a voluntary assessment on a severed mineral interest apparently arose in this state in response to holdings that, under our statutes, a severed mineral estate is passed by a sale of the surface for delinquent taxes.[11] By voluntarily entering an assessment of the mineral interest separately from the surface estate, the mineral owner's name and mailing address were put upon the county tax rolls. This practice was intended to assure the mineral owner of actual notice of tax delinquency proceedings concerning the surface estate.[12]

We thus come to the crux of the question before us. Does the voluntary assessment of a nonproducing severed mineral interest[13] subject that interest to a continuing tax liability so as to render it subject to tax delinquency proceedings? We hold that it does not. Oklahoma has consistently held that a nonproducing mineral interest is not subject to ad valorem taxation separately from the surface estate, and that such an interest adds no taxable value to the surface. Given these two points, it would require the creation from whole cloth of a new tax liability for a nonproducing mineral estate separate from the surface. Such a result is not permissible. Ad valorem taxes are creatures of statute and must be enforced in the manner provided for by those statutes.[14] Here we have neither the provision under our statutes for the tax liability suggested by appellant nor a methodology for enforcement. Hence there exists no basis under Oklahoma law for finding a nonproducing mineral interest delinquent in the payment of ad valorem taxes. To the extent that *Mitcham v. Bowers*[15] is inconsistent with the views expressed in the present opinion, it is expressly overruled.

 As there was no basis for finding taxes due on the mineral interest in question here, the proceedings which generated the tax certificate under which appellant claims title were invalid. The invalidity of the proceedings in turn render the tax certificate void.[16] We therefore affirm the decision of the trial court on this point.

DOOLIN, C.J., HARGRAVE, V.C.J., and HODGES, OPALA, WILSON, KAUGER and SUMMERS, JJ., concur.

---

10. *Kenoyer v. Board of Equalization,* supra, notes 6 and 7; *McNaughton v. Beattie,* supra, note 8.

11. See *Cornelius v. Jackson,* supra, note 9; *Hales v. Lee,* 199 Okl. 110, 184 P.2d 451 (1947).

12. This practice has now been rendered unnecessary by the passage of 68 O.S.Supp.1979 § 24323.1, which provides that a certificate tax deed or resale tax deed shall not convey mineral interests which are not owned by the owners of the surface rights.

13. Where the record is silent on the point, it will be assumed that the minerals have remained undeveloped. *Smith v. Anderson,* supra, note 9.

14. *McDonald v. Duckworth,* 197 Okl. 576, 173 P.2d 436 (1946).

15. Supra, note 4.

16. See *Rogers v. Sheppard,* 200 Okl. 203, 192 P.2d 643 (1948); *Davenport v. Doyle,* 57 Okl. 341, 157 P. 110 (1916).