**MERIWETHER et al. v. LOVETT et al.**

No. 21638. Oct. 24, 1933.

As Corrected Oct. 27, 1933.

J. A. Tillotson, Co. Atty., Twyford & Smith, G. Lee Gibbs, and John F. Pendleton, for plaintiffs in error.

Alvin Richards, F. A. Calvert, and J. Wood Glass, for defendants in error.

Samuel H. Glassmire, amicus curiae.

OSBORN J. This action was commenced in the district court of Nowata county by D. H. Lovett, the Delaware Consolidated Oil Company, a corporation, and the Henderson Oil Company, a corporation, against Gilmer Meriwether and John McCracken, county treasurer of Nowata county, and was an action wherein plaintiffs sought to enjoin the issuance of a tax deed by the county treasurer to the defendant Meriwether against the interests of plaintiffs in certain lands situated in Nowata county.

At the trial of said cause the court granted a permanent injunction against defendants, from which judgment defendants have appealed. The parties will be referred to as they appeared in the trial court.

The record shows that the defendant Meriwether holds a tax certificate for ad valorem taxes against the land in question for the year 1924; that he was proceeding through the service of notice on the various parties hereto to obtain a tax deed against said land when the petition of plaintiffs was filed and a temporary restraining order issued.

The cause was tried upon a stipulation of facts in which it was stipulated and agreed that the plaintiff Lovett was the owner of the mineral rights in said lands, and that the Delaware Consolidated Oil Company and the Henderson Oil Company were the owners of a seven-eighths working interest in the oil and gas rights by virtue of oil and gas leases upon the land in question. It was further stipulated that oil and gas were being produced on said lands in paying quantities and had been produced for many years, and that plaintiffs had filed with the State Auditor their returns showing the amount of oil and gas produced and had paid the gross production tax thereon and that none of the plaintiffs claimed any interest in the lands except the right or interest they had by virtue of oil and gas leases and conveyances of the mineral rights.

The stipulation sets out the contentions of the parties in the following language:

"It is further stipulated and agreed by and between all parties that the sole and only question involved herein is whether or not the oil and gas royalty and the working interest under the oil and gas leases aforesaid are subject to the ad valorem taxes of the state of Oklahoma during the period stated, while said leases are paying, producing oil and gas leases; the plaintiffs contending that, since they had paid in full the three per cent. gross production tax due upon the oil and gas produced on said land during said period of time, the mineral royalty interest and the oil and gas leases and leasehold estate are not subject to the ad valorem taxes, but that the payment by them of the gross production taxes was in lieu of the payment of any ad valorem taxes and that such ad valorem taxes do not affect the title of the mineral royalty owners and the owners of said leasehold estates; while, on the other hand, the defendant Gilmer Meriwether contends that a tax deed duly issued, based on a tax certificate, as hereinbefore set forth, would cancel any and all instruments of record affecting said title and would vest in the defendant Meriwether an absolute fee-simple title in and to the surface rights and the oil and gas rights, free and clear of any claims of the plaintiffs."

Plaintiffs do not contend that the tax certificate was not legally or properly issued. or that the procedure being followed by defendant Meriwether in procuring a tax deed is not the statutory procedure. The trial court did not enjoin the issuance of the tax deed as to the surface rights in the land, but provided that any tax deed issued by county treasurer to the defendant Meriwether would be subject to the rights of plaintiffs in and to the oil and gas mineral rights and royalties and the working interest under the oil and gas leases.

The issue presented here is whether the unproduced minerals in the strata of the earth, previously conveyed, and the working interest under the oil and gas leases. are subject to the ad valorem taxes assessed against the land itself. separately owned, during a

time when oil and gas were being produced from said land and the gross production taxes were being paid on the oil so produced. In other words, has the Legislature, by virtue of the provisions of section 9814, C. O. S. 1921 (section 12434, O. S. 1931), substituted the gross production tax for the ad valorem tax levied against said lands under such circumstances for the year in question, in so far as the rights of plaintiffs are concerned? If this query is to be answered in the affirmative, the judgment of the trial court is correct and must be affirmed.

The proper determination of the issues presented involves an interpretation of section 9814, C. O. S. 1921 (sec. 12434, O. S. 1931), the material parts being as follows:

"Every person, firm, association or corporation engaged in the mining or production within this state of asphalt, or of ores bearing lead, zinc, jack, gold, silver, or copper, or of petroleum or other crude oil or other mineral oil or of natural gas, shall, within 30 days after the expiration of the quarter-annual period ending on the last day of March, A. D. 1916, and of each quarter-annual period thereafter expiring respectively, on the last day of June, September, December, and March of each year, file with the State Auditor a statement, under oath, on forms prescribed by him, showing the location of each mine or oil or gas well operated by such person, firm, corporation, or association during the last preceding quarter-annual period; the kind of such mineral, oil or gas produced; the gross amount thereof produced, and the actual cash value thereof at the place of production; the amount of the royalty payable thereon, if any, to whom payable, and whether it is claimed that such royalty is exempt from taxation by law, and the facts on which such claim of exemption, if any, is based; and such other information pertaining thereto as the State Auditor may require, and shall at the same time pay to the State Auditor a tax equal to one-half of one per centum of the gross value of asphalt and of ores bearing lead, zinc, jack, gold, silver and copper produced, less the royalty interest, and equal to three per centum of the gross value of the production of petroleum or other crude or mineral oil and of natural gas, less the royalty interest. The owner of any royalty interest shall pay to the State Auditor the tax herein imposed upon such royalty interest within the time and in the manner provided by this act. * * *

"The payment of the taxes herein imposed shall be in full and in lieu of all taxes by the state, counties, cities, towns, townships, school districts and other municipalities upon any property rights attached to or inherent in the right to said minerals, upon leases for the mining of asphalt and ores bearing lead, zinc, jack, gold, silver or copper or for petroleum or other crude oil or other mineral oil or for natural gas, upon the mineral rights and privileges for the minerals aforesaid belonging or appertaining to land, upon the machinery, appliances, and equipment used in and around any well producing petroleum or other crude or mineral oil or natural gas, or any mine producing asphalt, or any of the mineral ores aforesaid and actually used in the operation of such well or mine; and also upon the oil, gas, asphalt, or ores bearing minerals hereinbefore mentioned during the tax year in which the same is produced, and upon any investment in any of the leases, rights, privileges, minerals, or property hereinbefore in this paragraph mentioned or described; but any interest in the land other than that herein enumerated, and oil in storage, asphalt, and ores bearing the minerals hereinbefore named, mined, produced, and on hand at the date as of which property is assessed for general and ad valorem taxation for any subsequent tax year shall be assessed and taxed as other property within the taxing district in which such property is situated at the time."

Defendant Meriwether does not claim any interest in the oil and gas after it is produced, but claims that the tax deed which he seeks to have issued to him will vest in him an interest in the oil and gas in place, which has been discovered but not produced, and that said deed will operate to cancel all prior conveyances of mineral rights in said lands and oil and gas leases, being the conveyances above mentioned of the plaintiffs. He contends that oil and gas unproduced constitute a part of the realty, whereas he concedes that produced oil and gas constitute personalty. He contends that the gross production tax is, in fact, a tax only on oil and gas which have been taken into physical custody from the natural reservoir in the earth, and that the gross production tax attaches thereto upon such production, but that the oil remaining in the natural reservoir is still a part of the realty and taxable as such.

It is to be noted that the determination of the essential question does not involve a consideration of the nonpayment of ad valorem taxes on lands where no production of oil and gas is being had, and consequently no gross production taxes are being paid.

Section 9582, C. O. S. 1921, provides:

"Real property for the purpose of taxation shall be construed to mean the land itself, and all buildings, structures and improvements or other fixtures of whatsoever kind thereon, and all rights and privileges thereto belonging or in any wise appertaining, and all mines, minerals, quarries, and trees on or under the same."

The Legislature is authorized to classify property for the purposes of taxation and to provide for the valuation of the different classes of property by different means or methods. To justify judicial interference with a legislative classification for taxation purposes, the classification must be based upon an invidious and unreasonable distinction with reference to the subject of the tax, and, unless the same appears, a court will not declare the classification void, although it may not approve its terms or may question the wisdom of the classification. Pure Oil Pipe Line Co. v. Cornish, 163 Okla. 79, 20 P. (2d) 1041.

The contention of plaintiffs in error that the three per cent. gross production tax is a tax on personal property only had consideration and approval by this court in the case of Carpenter v. Shaw, 134 Okla. 29, 272 P. 393, wherein was involved the taxability of certain oil royalties under the Gross Production Tax Law above quoted, accruing from restricted Indian lands which were nontaxable by treaty provisions and federal acts at the time the oil and gas were produced. This court held that oil and gas produced constituted personal property, and that the gross production tax thereon was a tax on personal property which had been severed from the tax exempt real estate, and that the levy of said gross production tax did not violate the exemption from taxation of the real estate involved. An appeal was taken from said decision to the Supreme Court of the United States (280 U. S. 363, 50 Sup. Ct. Rep. 121), said court reversed the judgment of this court, and in the body of the opinion appears the following discussion:

"Where a federal right is concerned we are not bound by the characterization given to a state tax by state courts or Legislatures, or relieved by it from the duty of considering the real nature of the tax and its effect upon the federal right asserted. Choctaw, O. & Gulf R. R. Co. v. Harrison, supra; Galveston, Harrisburg & San Antonio Ry. v. Texas, 210 U. S. 217, 227, 28 Sup. Ct. 638, 52 L. Ed. 1031. We think it plain that the tax imposed on the royalty interest of the present petitioners is not a tax on oil and gas severed from the realty, but is, by its very terms, a tax upon the right reserved in them as lessors and owners of the fee. The tax is imposed on the 'royalty interest * * * except such interests of the state of Oklahoma or such royalty interests as are exempted from taxation under the laws of the United States' and is made 'a lien on such interest'. It is in lieu of all other taxes 'upon any property rights attached to or inherent in the right' to the specified minerals and 'upon the mining rights and privileges for the minerals aforesaid belonging to or appertaining to the land'."

In the case of Shaffer v. Carter, 252 U. S. 37, 40 S. Ct. 221, that court said:

"Reference is made to the gross production tax law of 1915 (chapter 107, art. 2, subd. A, sec. 1, Sess. Laws 1915, p. 151), as amended by chapter 39 of Sess. Laws 1916 (page 106), under which every person or corporation engaged in producing oil or natural gas within the state is required to pay a tax equal to 3 per centum of the gross value of such product in lieu of all taxes imposed by the state, counties, or municipalities upon the land or the leases, mining rights and privileges, and the machinery, appliances, and equipment, pertaining to such production. It is contended that payment of the gross production tax relieves the producer from the payment of the income tax. This is a question of state law, upon which no controlling decision by the Supreme Court of the state is cited. We overrule the contention, deeming it clear, as a matter of construction, that the gross production tax was intended as a substitute for the ad valorem property tax, but not for the income tax, and that there is no such repugnance between it and the income tax as to produce a repeal by implication."

In the case of Board of Equalization of Carter County v. Carter Oil Co., 152 Okla. 99, 3 P. (2d) 816, which involved a claim of exemption of certain houses and equipment used in connection with the production of oil, this court, in analyzing several prior decisions, used the following language:

"This court held that the gross production tax was in lieu of any other taxes that might be levied and collected upon an ad valorem basis upon the equipment and machinery 'in and around any well producing natural gas or petroleum, or other mineral oil, and used in actual operation of such producing well from which a gross production tax is collected'."

In the case of New York Life Insurance Co. v. Board of Commissioners of Oklahoma County, 155 Okla. 247, 9 P. (2d) 936, Mr. Justice McNeill, in distinguishing the tax under consideration therein and the effect of payment thereof from the payment of the gross production tax, carefully considered and analyzed several of the previous cases and arrived at the conclusion that the gross production tax was intended as a substitute for the ad valorem tax. To the same effect is the case of In re Prairie Oil & Gas Co.'s Omitted Property Assessments, 159 Okla. 181, 13 P. (2d) 580.

In the case of Kenoyer v. Board of Equalization, 130 Okla. 3, 264 P. 891, it is said:

"The present gross production tax law on minerals (Comp. Stat. 1921, sec. 9814) does not operate to render real estate nontaxable on an ad valorem basis because the surface of the land is occupied by mining operations in the course of the development of the minerals beneath the surface.

"In this state, an added value for the purpose of taxation should not be given land because of actual or prospective minerals beneath the surface, provided the minerals are such as would be subject to the gross production tax when extracted from the earth."

From the expressions above quoted from the Supreme Court of the United States and from the prior decisions of this court, it appears certain that the Legislature has seen fit to classify mineral rights in lands from which oil and gas are being produced as a distinct classification of property for taxation, not upon an ad valorem basis, but upon the basis of production as a substitute for ad valorem taxes. No complaint is here urged as to the justice of said tax, for such tax has been paid. The Legislature recognized the difficulty of taxing on an ad valorem basis the mineral contents of land, by reason of lack of definite knowledge of the extent thereof and of the labor and expense of gaining actual dominion over the same. It recognized, however, that tremendous values were contained in hidden natural resources, deep in the earth, and that an active industry was extracting said natural resources and that same should bear its just part of the expenses of government. It therefore saw fit to classify mineral rights in lands, from which production of said minerals was being had, as a classification of property on which the state should exact a tax. This is made manifest by the specific provision of the act which provides that the "payment of the taxes herein imposed shall be in full and in lieu of all taxes by the state * * * upon any property rights attached to or inherent in the right to said minerals, upon the leases for the mining * * * for petroleum or other crude oil or other mineral oil or for natural gas, upon the mineral rights and privileges for the minerals aforesaid belonging or appertaining to land." This is made more manifest by the further

provision therein as follows: "But any interest in the land other than that herein enumerated * * * shall be assessed and taxed as other property within the taxing district. * * *"

Plaintiffs in error contend that oil and gas in place and unproduced are not subject to distinct ownership separate from the soil, and rely strongly upon the case of Indian Territory Illuminating Oil Co. v. Board of Education, 43 Okla. 307, 142 P. 996. We do not regard a discussion of the peculiar qualities of oil and gas while in the earth, and the rights and estates which may be conveyed by written instruments relating thereto, necessary to a determination of this case. Suffice it to say that the courts have recognized that the conveyance of said rights is a valuable property right which will be protected (American Surety Co. v. Marsh, 146 Okla. 261, 293 P. 1041), and such right is subject to reservation and sale (Myers v. Hines, 149 Okla. 232, 300 P. 309; Ramy v. Stephney, 70 Okla. 87, 173 P. 72; Dunlap v. Jackson, 92 Okla. 246, 219 P. 314; Barker v. Campbell-Ratcliff Land Co., 64 Okla. 249, 167 P. 468), and a conveyance thereof amounts to the creation of a separate estate, Cuff v. Koslosky, 165 Okla. 135, 25 P. (2d) 290.

As to the case of Indian Territory Illuminating Oil Co. v. Board of Education, supra, it appears that the statutes have been wholly changed since the decision in that case; but we can find nothing therein which conflicts in reason with the principles above set forth.

We therefore conclude that the payment of the gross production tax served to relieve the mineral rights owned by the various plaintiffs from liability for ad valorem taxes levied against said lands. The claims of defendant Meriwether and the assertion of rights on the part of the county treasurer constituted a cloud on the title of plaintiffs to their interest in said mineral rights which they were entitled to have removed by a proper decree. Shaffer v. Carter, supra.

The judgment of the trial court is affirmed.

CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, and BUSBY, JJ., concur. RILEY, C. J., and WELCH J., dissent. BAYLESS, J., disqualified.