PETEET et al. v. CARMICHAEL.

No. 28128. July 7, 1942.

Rehearing Denied Dec. 1, 1942.

Application for Leave to File Second Petition for Rehearing Denied Dec. 15, 1942.

*131 P. 2d 767.*

Speakman & Speakman, of Sapulpa, W. F. Speakman, of Drumright, and W. F. Semple, of Tulsa, for plaintiffs in error.

C. E. Thomas, of Oilton, and T. L. Blakemore, of Sapulpa, for defendant in error.

OSBORN, J. This action was instituted in the district court of Creek coun-

ty by T. R. Carmichael, hereinafter referred to as plaintiff, against Morris E. Peteet, Samuel Waller, Flossie F. Marrs, Agnes D. Colvin, and George W.Crocker, hereinafter referred to as defendants, as an action to quiet title to certain lots in the town of Markham in Creek county. Judgment was entered in favor of plaintiff, and defendants have appealed.

On June 9, 1913, one Frank M. Marrs was the owner of 81.63 acres of land in Creek county, described as the northeast quarter of the southwest quarter and lot 11 in section 6, township 18 north, range 7 east. On that date he executed to one C. B. Shaffer an oil and gas mining lease covering said tract. The lease was subsequently assigned to the Deep Rock Oil Company, which corporation is now the owner of the lease. Said corporation is not a party to this action and the leasehold estate is not involved herein. On April 14, 1914, Frank M. Marrs transferred to one J. Percy Brinton the east 40 acres of the above-described tract and the title to said 40 acres is not involved in this action. On January 8, 1915, Frank M. Marrs caused to be filed in the office of the county clerk of Creek county a plat of the town of Markham, wherein he divided approximately 35 acres of lot 11 into lots, blocks, streets, and alleys, naming the streets and numbering the lots and blocks as provided by law. The remaining 6.63 acres of said lot were not affected by the plat and were left as unplatted acreage. Subsequent to filing said plat, Frank M. Marrs executed warranty deeds to various purchasers of 75 or 80 of the lots as shown by the plat. The various deeds contained in the habendum clause the following language: "except an oil and gas lease made to C. B. Shaffer and all royalties derived thereunder."

On February 11, 1915, Frank M. Marrs and wife conveyed by warranty deed to S. W. Colvin an undivided one-fourth interest in and to lot 11, section 6, township 18 north, range 7 east. On June 17, 1925, Colvin conveyed his interest to his wife, Agnes D. Colvin, one of the defendants herein. On April 29, 1916, Marrs and wife conveyed a one-fourth interest in the property, which interest by mesne conveyances passed to George W. Crocker, one of the defendants herein. On January 13, 1917, Marrs and wife executed a conveyance of a one-fourth interest to Samuel Waller and Morris E. Peteet, defendants herein. On June 2, 1924, Marrs executed a general warranty deed to defendant Flossie F. Marrs for all of his interest in lot 11, section 6, township 18 north, range 7 east, including the township of Markham.

A town was duly established as Markham; a post office, a bank, and several business enterprises were established there during the year 1915. Lot 11, section 6, township 18 north, range 7 east, last appeared as acreage upon the tax rolls of Creek county for the year 1915. For the year 1916 and all subsequent years the platted portion of said lot appeared upon the tax rolls as lots and blocks in the town of Markham under the description contained in the plat. The 6.63 acres of lot 11 were not assessed by the county under any description subsequent to the year 1915, and said tract is not involved in this action. At the resales of 1920, 1924, 1927, and 1928, various lots were sold by the county for the payment of taxes and were purchased at said sales by the county. Subsequent thereto the county commissioners issued their deeds to the various purchasers of said lots and various conveyances were made by said purchasers and all of said titles subsequently passed to plaintiff herein. The evidence is undisputed that he has been in possession of the property for a number of years and has made substantial improvements thereon.

It appears that a number of producing oil wells were drilled on the east 40, known as the Brinton tract, and in November, 1916, after the filing of the plat of the town of Markham, the Deep Rock Oil Corporation drilled a producing well upon the 6.63 acres comprising the unplatted portion of lot 11. It appears that said well has produced oil continuously from that date to the present time.

The defendants have attacked the validity of the deeds issued by the county commissioners and have also attacked the validity of the resale tax deeds issued by the county. We find it unnecessary to determine the issues thus raised. Under the facts hereinabove stated and the issues presented in the briefs, the determinative and controlling question is whether or not the production of oil on the west 40 acres of the tract embraced in the oil and gas lease and the subsequent payment of gross production taxes thereon operated to sever the mineral estate from the whole estate for tax purposes, thereby rendering the resale tax deeds ineffective to convey the mineral rights in the various lots and blocks involved herein.

Plaintiff's principal proposition is stated as follows:

"Each town and city lot is a separate and distinct taxable unit under the statutes of the State of Oklahoma, and must be separately listed, assessed, and valued as such. The gross production tax upon oil provided for by the statutes of the State of Oklahoma is levied upon oil actually produced from a taxable unit as defined under authority of section 12616, O. S. 1931, without regard to the territorial limits of real estate covered by the oil and gas lease under which it is discovered."

Section 12434, O. S. 1931, 68 Okla. St. Ann. § 821, which statute was in effect at the time the taxes herein accrued, provides for the payment of a gross production tax, and further provides that the payment of said tax shall be in lieu of all taxes upon any property rights attached to or inherent in the right to said minerals upon leases for the mining of petroleum or other crude oil. The statute takes no cognizance of separate taxable units carved out of the surface rights of the original tract subsequent to the execution of the lease. The lease in this case covered but a single taxable unit of land as defined by section 12616, and section 12628, O. S. 1931, 68 Okla. St. Ann. §§ 181 and 294.

In the case of Meriwether v. Lovett, 166 Okla. 73, 26 P. 2d 200, it was held:

"Where the surface of land and the mineral rights are separately owned, and after discovery of oil or gas and while same are being produced therefrom and the gross production tax is being paid, such tax is in lieu of all other taxes upon oil and gas produced therefrom, upon the oil in place, the mining rights and privileges granted under a lease thereof, and the royalty rights reserved thereunder, and a tax deed issued pursuant to a levy of ad valorem taxes on said lands after discovery and during production of oil or gas and the payment of said gross production tax, does not convey the mineral rights in said lands."

In the case of McNaughton v. Beattie, 181 Okla. 603, 75 P. 2d 400, it was held:

"Where gross production tax has been paid on oil or gas produced from the land conveyed by resale tax deed, issued pursuant to a levy of ad valorem taxes, after discovery and during production of oil or gas and payment of said gross production tax, said tax deed does not convey the mineral rights in said land, even though the title to the mineral and surface rights are united in one party."

Defendants contend that these cases are controlling on the point that the resale tax deeds did not convey the mineral interests, but plaintiffs contend that they are not applicable for the reason that the gross production taxes were not paid. In this connection the evidence is not satisfactory but is sufficient to sustain the conclusions that all of the gross production tax on the 7/8ths working interest was paid, and that a portion of the tax on the royalty interests was paid and a portion was unpaid. It is noted that the statutes uses the language "payment of the taxes," which accounts for the incorporation of that language into the opinions which have been referred to. An examination of the full text of those opinions discloses that the severance of the mineral rights from the whole estate for tax purposes is not made dependent upon *payment* of gross production taxes. We quote from the body of the opinion in the case of McNaughton v. Beattie, supra, as follows:

". . . But it will be noted from a careful reading of Meriwether v. Lovett,

supra, that the reason for excepting the mineral rights from the contemplated tax deed was not because of the severance of the title, but because of the severance of the two estates for tax purposes, with the gross production tax becoming a substitute for an ad valorem tax on the mineral rights as long as oil or gas is being produced in sufficient quantities to warrant the payment of such tax. . . .

"The ultimate basis of a tax deed is a valid assessment and a lien. The lien can be no broader than the assessment, and the tax deed can be no broader than the lien. Consequently, when the mineral rights are excluded from the assessment of the ad valorem tax because of the payment of the gross production tax, they are excluded from the lien and cannot be conveyed by the tax deed. The fact that the title remains in the same person is immaterial. We, therefore, conclude that the severance of the estate for taxation purposes, when oil and gas is produced, is the reason for excluding the mineral rights in a resale tax deed, and the unity of the title in one party 'of the estates so severed cannot affect the rule promulgated in Meriwether v. Lovett, supra."

In the case of Meriwether v. Lovett, supra, it was said:

"From the expressions above quoted from the Supreme Court of the United States and from the prior decisions of this court, it appears certain that the Legislature has seen fit to classify mineral rights in lands from which oil and gas are being produced as a distinct classification of property for taxation, not upon an ad valorem basis, but upon the basis of production as a substitute for ad valorem taxes. No complaint is here urged as to the justice of said tax, for such tax has been paid. The Legislature recognized the difficulty of taxing on an ad valorem basis the mineral contents of land, by reason of lack of definite knowledge of the extent thereof and of the labor and expense of gaining actual dominion over the same. It recognized, however, that tremendous values were contained in hidden natural resources, deep in the earth, and that an active industry was extracting said natural resources and that same should bear its just part of the expenses of government. It therefore saw fit to classify mineral rights in lands, from which production of said minerals was being had, as a classification of property on which the state should exact a tax. . . ."

Section 12437, O. S. 1931, 68 Okla. St. Ann. § 824, outlines the procedure of the collection of delinquent gross production taxes. It is clear that the failure of state officers to proceed to collect such taxes when they become delinquent does not operate to reclassify mineral rights in lands to make them subject to ad valorem taxes and permit a conveyance of said minerals by a resale tax deed. It is not the payment of the tax that classifies the property for the purpose of taxation, but the production of the minerals from the land and the levying of a tax thereon by the statute above referred to.

Having reached this conclusion, it is unnecessary to consider the other propositions presented.

We hold that the mineral rights in the lots are not disturbed or affected by the tax deeds and that the judgment of the trial court quieting title to the mineral rights in the plaintiffs should be vacated, but the judgment in all other respects should be and is hereby affirmed.

CORN, V. C. J., and BAYLESS, GIBSON, and DAVISON, JJ., concur. WELCH, C. J., and RILEY, HURST, and ARNOLD, JJ., dissent.