**BOONE et al.**

v.

**CLAXTON et al.**

No. 35465.

Supreme Court of Oklahoma.

Jan. 27, 1954.

Rehearing Denied April 27, 1954.

Cornish & Baumert, McAlester, for landowner, plaintiff in error.

Earl Q. Gray, Ardmore, for plaintiff in error Edwin B. Cox.

Fellows & Fellows, Tulsa, for plaintiff in error Schermerhorn Oil Corp.

Walter P. Dornaus, Tulsa, for plaintiff in error Kewanee Oil Co.

H. A. Ledbetter, Ardmore, for defendants in error.

DAVISON, Justice.

This suit, of equitable cognizance, was brought by the plaintiffs, C. E. Claxton and C. C. Claxton, to quiet their title, founded upon a resale tax deed, to a fifty acre tract of land in Carter County, Oklahoma, as against the defendants, Harriet Boone, nee Frazier, the original allottee and owner, and Edwin B. Cox, Kewanee Oil Company and Schermerhorn Oil Corporation, oil and gas lessees from the said Harriet Boone, nee Frazier. The parties will be referred to as they appeared in the trial court.

The 50 acres, here involved, was a part of the 250 acre allotment of Harriet Frazier, a Choctaw Indian of the full-blood. Two oil and gas leases which, together, covered her entire allotment were executed by her guardian in 1913. By properly approved assignments, the said Edwin B. Cox, Kewanee Oil Company and Schermerhorn Oil Corporation became the owners of said leases insofar as the 50 acres in question were concerned. Numerous wells were drilled under the terms of each lease and have been producing oil continuously for more than 30 years. During said time, gross production taxes have been paid on the oil produced from the premises.

In May 1939, the 50 acres was sold at Tax Resale to the chairman of the board of county commissioners, who, subsequently and on January 19, 1940, conveyed the same by County Deed to the plaintiff, C. E. Claxton, under which deed C. C. Claxton also claimed. On a part of the lands so sold, there was one oil well which had been continuously producing for some 30 years. The taxes, for which the property was sold in 1939, included all of the taxes for 1938 although the last one-fourth thereof were not past due or delinquent. The Resale Tax Deed was recorded on June 3, 1939, and the County Deed on Jan-

uary 19, 1940. In the early part of 1942, the plaintiffs built a fence inclosing practically all of the 50 acres, making it a part of an adjoining pasture which they owned and on which they grazed cattle. They took actual open possession of all lands inside the fence. The fence did not run along the section line but left a strip of land some sixty to seventy feet wide outside. On one end of that strip was located a producing oil well which, one of the plaintiffs testified, they made no claim to.

This suit was filed on May 19, 1950, more than five years after plaintiff took possession. Judgment was for plaintiffs, quieting their title to all of said 50 acres less a 2½ acre tract around the producing oil well thereon and subject to the oil and gas leases of the defendant lessees. From the judgment, the defendant Boone and the defendant lessees have separately appealed.

It is firmly established law in this jurisdiction that a resale of land for taxes is invalid when the amount of the taxes, for which it is sold, includes the entire previous years tax, although the last one-fourth thereof was not then delinquent. Therefore, the tax deed, under which the plaintiffs herein claim, was void and their only right to relief springs from the provisions of 12 O.S.1951 § 93, pars. (3) and (6), the five year statute of limitations. If there had been no oil production from the lands involved, the instant case would fall squarely within the rules and reasoning in the present case of Jenkins v. Frederick, 208 Okl. 583, 257 P.2d 1058, 1059, wherein this court held that a resale tax deed, although void on its face, cannot be attacked when accompanied with possession for the five year statutory period of limitations after the recording of said deed. It was there further held that, under such circumstances, the prescriptive title of the tax deed holder extended to the "oil and gas rights therein, where oil and gas was not being produced therefrom and gross production tax paid thereon during the years of delinquency in failing to pay ad valorem taxes."

Before considering, in the case at bar, the effect of oil production, we turn to the record insofar as it deals with the extent of possession of the lands by plaintiffs. This is not one of those situations where the adverse claimant occupied actually a part of the premises claiming constructive possession of the remainder. Plaintiffs enclosed, with a strong cattle-proof fence, all the land to which they laid claim. Outside of that fence was a strip of ground some 60 to 70 feet in width. The testimony of one of the plaintiffs was to the effect that they did not enclose nor did they attempt to possess or occupy the land upon which the producing well was located because they did not want to be bothered with it. Of their own accord then, plaintiffs limited their possession to that part of the premises within the fence. Considering the tax deed as color of title, but not deciding that it is such, the plaintiffs restricted their claim within narrower bounds than those designated in the deed. Their "possession is not measured by the boundaries of (their) deed but goes only to the boundaries of (their) claim". 2 C.J.S., Adverse Possession, § 185, page 781. That is the converse of the holding in the case of Kelly v. Choate, 192 Okl. 397, 136 P.2d 885, although color of title was not there involved.

The remaining proposition is the effect of the production of oil from the lands which plaintiffs claim. All phases of that proposition have been considered and determined in the case of Peteet v. Carmichael, 191 Okl. 593, 131 P.2d 767, 769. Therein we quoted from former opinions, as follows:

"In the case of Meriwether v. Lovett, 166 Okl. 73, 26 P.2d 200, it was held: 'Where the surface of land and the mineral rights are separately owned, and after discovery of oil or gas and while same are being produced therefrom and the gross production tax is being paid, such tax is in lieu of all other taxes upon oil and gas produced therefrom, upon the oil in place, the mining rights and privileges granted under a lease thereof, and the royalty rights reserved thereunder, and a tax deed issued pursuant to a

levy of ad valorem taxes on said lands after discovery and during production of oil or gas and the payment of said gross production tax does not convey the mineral rights in said lands.'

"In the case of McNaughton v. Beattie, 181 Okl. 603, 75 P.2d 400, 401, it was held: 'Where gross production tax has been paid on oil or gas produced from the land conveyed by resale tax deed, issued pursuant to a levy of ad valorem taxes, after discovery and during production of oil or gas and payment of said gross production tax, said tax deed does not convey the mineral rights in said land, even though the title to the mineral and surface rights are united in one party.'

" * * * We quote from the body of the opinion in the case of McNaughton v. Beattie, supra, as follows: ' * * * But it will be noted from a careful reading of Meriwether v. Lovett, supra, that the reason for excepting the mineral rights from the contemplated tax deed was not because of the severance of the title, but because of the severance of the two estates for tax purposes, with the gross production tax becoming a substitute for an ad valorem tax on the mineral rights as long as oil or gas is being produced in sufficient quantities to warrant the payment of such tax. * * *

" 'The ultimate basis of a tax deed is a valid assessment and a lien. The lien can be no broader than the assessment, and the tax deed can be no broader than the lien. Consequently when the mineral rights are excluded from the assessment of the ad valorem tax because of the payment of the gross production tax, they are excluded from the lien and cannot be conveyed by the tax deed. The fact that the title remains in the same person is immaterial. We therefore conclude that the severance of the estate for taxation purposes, when oil and gas is produced, is the reason for excluding the mineral rights in a resale

tax deed, and the unity of the title in one party of the estates so severed cannot affect the rule promulgated in Meriwether v. Lovett, supra.' "

It was further said, in the Peteet v. Carmichael case, supra, that:

" * * * It is clear that the failure of state officers to proceed to collect such taxes when they become delinquent does not operate to reclassify mineral rights in lands to make them subject to ad valorem taxes and permit a conveyance of said minerals by a resale tax deed. It is not the payment of the tax that classifies the property for the purpose of taxation, but the production of the minerals from the land and the levying of a tax thereon by the statute above referred to."

In the case at bar, the lands described in the resale tax deed and the county deed to plaintiffs, were a part of the premises covered by the leases of defendants. Oil was being produced from the leased lands, one of said wells being located on a part of the 50 acres included in the tax deed. The gross production tax being paid on, or charged against the production was "in lieu of all other taxes upon oil and gas produced therefrom, upon the oil in place, the mining rights and privileges granted under a lease thereof, and the royalty rights reserved thereunder," Meriwether v. Lovett, supra.

Under these circumstances there was, for all tax purposes a severance of the mineral estate from the surface estate, which distinguishes this case from that of Jenkins v. Frederick, supra, and from the cases of Secrest v. Williams, 185 Okl. 449, 94 P.2d 252, and others therein discussed. The effect of such severance makes the rules of law, analyzed and applied in the case of Noble v. Kahn, 206 Okl. 13, 240 P.2d 757, applicable here. In the last cited case, it was held that:

"Where there is a severance of the mineral estate from the surface estate, the owner of the minerals does not lose his right or his possession * * *, nor can the owner of the surface acquire title by prescription

to the minerals by his continued occupancy of the surface alone."

Thus the judgment of the trial court herein should have been for the lessee defendants quieting their titles to the leasehold estates in the minerals and so much of the surface as was conveyed by the leases. Said judgment should have been for the lessor defendant, Boone, quieting her title to the royalty rights reserved under leases and to the fee of the lands outside of plaintiffs' fence which was not occupied by them. The judgment for plaintiffs should have quieted their title to the remaining estate in the lands within their fenced boundary. Because the exact location of the fence is not disclosed by the record, the same must be remanded so that evidence on that point may be presented.

The judgment is reversed and the cause remanded, for further evidence as herein pointed out, with directions to enter judgment in conformity with the views herein expressed.

HALLEY, C. J., JOHNSON, V. C. J., and CORN, ARNOLD, O'NEAL, WILLIAMS and BLACKBIRD, JJ., concur.