Elmer KNUTTER, Plaintiff in Error,

v.

Anita SMITH, formerly Peterson, nee Schmidt, et al., Defendants in Error.

No. 37482.

Supreme Court of Oklahoma.

Feb. 5, 1957.

K. D. Bailey, L. L. Cowley, Okmulgee, for plaintiff in error.

Carland E. Smith, George R. Inglish, Morris G. Gray, Okmulgee, for defendants in error.

WILLIAMS, Justice.

This is an appeal by Elmer Knutter, hereinafter referred to as plaintiff, from a judgment quieting title to an undivided 1/8 mineral interest each in Anita Smith, formerly Peterson, nee Schmidt, Mary Lou McCune, formerly Dick, nee Schmidt, and Elizabeth Ann Haynes, nee Schmidt, hereinafter referred to as defendants, in an 80 acre tract of land in Okmulgee County, Oklahoma.

Although plaintiff assigns numerous specifications of error, only two propositions have been briefed or argued and only those two will be noticed.

As his first proposition plaintiff asserts:

"That the court committed error in quieting the title of defendants in error to the entire eighty (80) acres, when the evidence as stipulated and given, established the fact that there was no production of oil or gas, or gross production taxes paid on the West Forty (W40) acres involved after some time in the year 1933, and was not producing oil or gas at the time of the 1939 Resale for delinquent taxes."

Since this proposition is concerned with the production of oil or gas from the property involved and the payment of the gross production tax thereon, it is necessary to set out the factual situation pertaining thereto.

Although the entire 80 acre tract was originally under common ownership, it had been separated for the purpose of exploring for and producing oil and gas into two 40 acre tracts by the execution of separate oil and gas leases to different lessees on the west 40 acres, in 1921, and on the east 40 acres, in 1923. Oil was discovered on both tracts and was produced from the east 40 acres, and the gross production tax paid thereon, continuously from about 1923 until some time in 1943. As to the west 40 acres however, the production of oil, and the payment of the gross production tax thereon, only continued until some time in the year 1933, and then ceased.

In 1939 the entire 80 acre tract was sold to Okmulgee County at tax resale for delinquent ad valorem taxes for the years 1928 to 1937, inclusive, and a Resale Tax Deed issued to the chairman of the Board of County Commissioners of Okmulgee County. Plaintiff thereafter acquired a deed from the county as to 70 acres and the county's grantee as to 10 acres and asserts title to the entire 80 acre tract based thereon.

█ It is apparent that as to the east 40 acres the resale tax deed to the county conveyed no mineral rights, since the mineral estate had been previously severed for tax purposes by the production of oil and the payment of the gross production tax thereon, which severance occurred prior to the inception of any delinquent ad valorem taxes for which the property was sold and continued past the time of the resale and issuance of the resale deed. It is well settled that under such circumstances the mineral estate in the oil and gas does not pass with a resale tax deed issued for non-payment of ad valorem taxes. Horwitz v. Davis, 207 Okl. 448, 250 P.2d 435; Peteet v. Carmichael, 191 Okl. 593, 131 P.2d 767; McNaughton v. Beattie, 181 Okl. 603, 75 P.2d 400; Meriwether v. Lovett, 166 Okl. 73, 26 P.2d 200.

█ As to the west 40 acres, however, as already indicated, the production of oil and the payment of the gross production

tax thereon ceased in the year 1933, and the property was sold at tax resale and resale tax deed issued in 1939 based on delinquent ad valorem taxes for the years 1928 to 1937, inclusive. It is apparently plaintiff's contention that under such circumstances a valid resale tax deed conveys to and vests in the grantee a fee simple title which includes the mineral estate. We so held in the case of Sears v. Randolph, 195 Okl. 200, 156 P.2d 595. Plaintiff's contention would therefore be well taken had the trial court held that the resale deed did not convey title to the mineral estate in the oil and gas under the west 40 acres because of the production of oil and the payment of the gross production tax thereon when such production and payment had ceased approximately 6 years prior to the tax resale. The record reveals, however, that such was not the holding of the court nor even the contention of defendants. Defendants contended, and now contend, and the trial court held that plaintiff owned an undivided 3/8 interest in the surface of the land at the time of the resale and for some time theretofore and was under a legal and moral obligation to pay the taxes due thereon and could not profit by his own neglect at the expense of his cotenants, who were mineral owners. In so holding, the court was following a well established rule in this jurisdiction that one obligated to pay taxes on land may not obtain title from a sale of the land for taxes, so as to defeat the interest of his cotenants. Pierce v. McGinley, Okl., 274 P.2d 59; Colby v. Stevenson, Okl., 265 P.2d 477; Edwards v. Gardner, 198 Okl. 217, 176 P.2d 1014; Warner v. Day, 197 Okl. 319, 170 P.2d 246; Curry v. Frerichs, 194 Okl. 230, 149 P.2d 95; Burnett v. Cole, 193 Okl. 25, 140 P.2d 1012.

In the case of Curry v. Frerichs, supra [149 P.2d 96], the court said:

"One who is under a moral or legal obligation to pay taxes assessed against land cannot, by allowing the land to be sold as a consequence of his failure to pay such taxes, add to or strengthen his own title by purchasing the land at the tax sale, either in person or through the agency of another, or by purchasing the land from a stranger who has acquired title at or through the tax sale. Such purchase is deemed a mode of redeeming the land from the tax sale and paying the taxes, and any interest so acquired ordinarily inures to the benefit of cotenants or others as to interests or rights owned by them in the land prior to the tax sale."

In the case at bar the trial court specifically found that plaintiff owed the primary duty to pay the taxes assessed against the land in question, and rendered judgment accordingly. The fact that the west 40 acres had stopped producing oil in 1933 has no bearing whatsoever on the correctness of the trial court's judgment, and plaintiff's first proposition is therefore completely irrelevant.

The only other assignment of error urged or argued by plaintiff is the failure and refusal of the court, upon motion and request of the plaintiff, to order and direct the defendants, who had tendered into court such sums as the court might find due and owing from said defendants to said plaintiff as said defendants would have been bound to pay, if they had been seeking to redeem the land from said tax sale, to make good such tender by paying such money into court.

■ It might first be noted that defendants tendered such sums as the court might find due and owing into court. The court, however, never found any sum to be due and owing. This case is not one of those in which a tender or payment of monies into court is required. Defendants did not and do not seek to "invalidate", "set aside", or "avoid" the resale tax deed, as those terms are used in our tender statutes, 68 O.S.1951 §§ 453, 455. On the contrary they have at all times conceded the validity of the tax resale and the resale tax deed, but have sought to impress a trust upon the title thus acquired by plain-

tiff, and to have it judicially declared that as to them the acquisition of the tax title amounted only to a payment of the taxes. We held in the case of Hearn v. Yoder, 193 Okl. 353, 143 P.2d 1009, that under such circumstances the tender statutes do not apply. We therefore find no merit in plaintiff's second proposition.

Judgment affirmed.

WELCH, C. J., CORN, V. C. J., and DAVISON, HALLEY, JOHNSON, JACKSON and CARLILE, JJ., concur.

BLACKBIRD, J., concurs in result.