Elizabeth Jane KOLB et al., Plaintiffs in Error,

v.

Mark CARNES, aka Mark B. Carnes, Harriett Jane Bonner, and the Baptist Foundation of Oklahoma, Trustee for Oklahoma Baptist University, Defendants in Error.

No. 40388.

Supreme Court of Oklahoma.

April 21, 1964.

Otey, Johnson & Evans, by Geo. N. Otey, James L. Dolman, Ardmore, and Cund & Garvin, Duncan, for plaintiffs in error.

McClelland, Collins, Sheehan, Fauss, Bailey & Bailey, by Jack M. Short, Oklahoma City, for defendants in error.

BLACKBIRD, Chief Justice.

This is an appeal on original record in a quiet title case involving 10 acres of land described as the SW¼ SW¼ SW¼ of Section 13, Township 1 North, Range 4 West, in Stephens County.

On October 25, 1923, one Ward H. Bell, the then owner of said 10 acres, and his wife, executed and delivered an oil and gas lease to F. E. Tucker covering it, and another 60 acres in the same quarter section, and another 20 acres Bell owned in Section 24, in the same township and range. Within the primary term of said five-year lease, oil and gas was discovered on the leased 90 acres. The record does not show upon which geographical division, or sub-division, of the leasehold the well, or wells, that had been drilled, were located; but none was located on the subject 10 acres on May 11, 1929, when two assignees of the lease relinquished, or released, it as to said 10 acres. Nor has any well been drilled on said 10 acres since the date of said release, but 10 wells have been drilled on other parts of the 90 acres. Five, six, or seven of these wells are still producing, the production under the lease, and the payment of the Oklahoma gross production tax thereon, having continued since its beginning, on through the time this case was tried.

On two different dates between 1929 and 1938, the Bells executed and delivered mineral deeds, each of which covered an undivided one-fourth interest in the minerals under the entire 90 acres, to one C. W. Tomlinson. Of said 90 acres, the 70 acres in Section 13, (including the 10 acres involved herein) were assessed as one unit for ad valorem taxes for the years 1938 to 1941, both inclusive. When all, or a majority, of these taxes were not paid, this 70 acres was sold for allegedly delinquent ad valorem taxes, and, on May 11th 1942, was resold to the County at tax resale. Thereafter, one J. A. Carnes obtained a County Commissioners' deed dated May 2nd, 1943, purporting to convey him title to said 70 acres. Defendants in error, hereinafter referred to as plaintiffs, apparently deraign their claimed title to mineral interests under the land through Carnes. Plaintiffs in error, hereinafter referred to as defendants, are heirs, and heirs of grantees, of the afore-mentioned C. W. Tomlinson, who purported to convey an undivided ⅙th interest in the minerals under the hereinbefore described 90 acres to one Ruth Lavers White, by a mineral deed executed on December 30, 1944.

When plaintiffs filed their petition and commenced this action in December, 1961, they based their right to relief, not alone on the above described tax sale, re-sale and county commissioners' deed to J. A. Carnes, but also alleged, in substance, that they, and their predecessors in title, had been in adverse possession of the 10 acres for more than 15 years, and therefore had acquired title to said land by prescription.

In their answers and cross petitions the defendants included general denials, and specific allegations that the tax deed and tax sale proceedings through which plaintiffs deraign their title were void for several reasons. One of the reasons claimed was that the land was not advertised and sold as provided by law. Another was that the land was not legally assessable, because, in view of the production of oil and gas under the original lease of 1923, and the payment of gross production tax thereon, the mineral estate was, for ad valorem tax purposes, severed from the surface of the 90-acre tract covered by said lease, of which said tract the involved 10 acres was a part. Defendants also tendered all so called "delinquent taxes", interest, penalties and costs necessary to redeem the subject 10 acres from the sale to Carnes, in the event the court should rule that the minerals thereunder were subject to the ad valorem taxes assessed against said acreage. Some of the defendants also alleged, among other things in substance, that plaintiffs' claims were barred by the period of limitations in such cases made and provided.

After plaintiffs had filed answers to defendants' cross petitions, and trial was held in July, 1962, a jury being waived, the court took the case under advisement and authorized submission of written briefs. Thereafter, in September of the same year, the court entered a judgment in favor of plaintiffs, quieting their title against defendants. The only clues to the basis of said judgment are found in the following excerpt from its Journal Entry:

"The court specifically finds and adjudges that plaintiffs acquired title to their interest * * * by * * * adverse possession under color of title of them and their predecessors in title for at least five years from and after the recording of their predecessor's tax deed and that the ownership of said property so acquired constitutes legal title by prescription and that any and all claims of the said defendants are barred by the Statutes of Limitations of the State of Oklahoma. The court further specifically finds and adjudges that the property involved herein became taxable from and after the release of the oil and gas lease in evidence herein so that the tax deed conveyed title to the minerals to the * * purchaser when coupled with actual adverse possession for the statutory period of time.

* * * * * *

After the overruling of their motion for a new trial, defendants perfected the present appeal.

The propositions defendants submit for reversal are obviously contemplated to obtain a negative answer to the question: Was the involved 10 acres assessable for ad valorem taxes in view of the hereinbefore described payment of gross production taxes on the production of wells located on other portions of the original 90-acre leasehold? Plaintiffs contend that the trial court's affirmative answer to this question was correct, in view of the fact that the lease, originally covering 90 acres, was released as to the subject 10 acres long before its assessment as part of a 70-acre tract for the years beginning with 1938, as aforesaid.

■ It is defendants' position, on the other hand, that since the production under the 90-acre lease, and payment of the gross production tax thereon, has the effect, under our previous decisions, of severing, for tax purposes, the mineral estate, from the rest of the fee, in the entire 90 acres, the release, in 1929, of the subject 10 acres made no change in its status, as concerns the subject of taxation. To support defendants' conclusion that this 10 acres has not been assessable for ad valorem taxes since May 11, 1929, part of the production of the wells on the other 60, of the 70, acres (which were assessed for ad valorem taxes as one unit) must be considered as having been derived from this 10 acres. To state the matter more specifically, if defendants' position is to prevail, payment of the gross production tax on the production from the wells located on the 80 acres that has remained under the lease at all times since May 11, 1929, must be regarded as having been expended for production from this 10 acres, despite the fact it has remained unleased since that date. This we cannot do. In the absence of a lease, or any development, on the subject ten acres at the time of its ad valorem tax assessment, we think it came within the same category as land, from which production had ceased, or,

whose development for oil and gas mining purposes had been abandoned. Defendants concede that land in either of the two latter classes is subject to ad valorem taxation. All parties seem to recognize that this is the first time that a case involving this identical fact situation has been before this court. It is our opinion that here the exemption from ad valorem taxation extended no further than to those geographical subdivisions remaining under the lease in 1938.

The salient difference between this case and Boone v. Claxton, Okl., 269 P.2d 980, cited by defendants, is that there one of the producing wells was on the 50 acres involved, while here, as previously noted, there has never been a well on the 10 acres involved; and the fact that production from other parts of the 90 acres (described in the original lease) would have served to extend the lease's term, as to this 10 acres, had that term not been ended by the release (for which proposition defendants cite Smith v. Gypsy Oil Co., 130 Okl. 135, 265 P. 647) is not of decisive importance on the tax question involved here. In McNaughton v. Beattie, 181 Okl. 603, 75 P.2d 400, there apparently was no oil and gas lease on the land involved and the oil had been produced by the owners of the fee, yet this court held that what was referred to as the mineral estate (severed for tax purposes from the rest of the fee) was not subject to ad valorem taxes during the years for which the land was assessed and sold. As pointed out by plaintiffs, this case is also different from Dilworth v. Fortier, Okl., 354 P.2d 1091, wherein the oil and gas lease on the land involved was not released until after its sale and re-sale for delinquent taxes.

■ Under the rule governing judgments, such as the one herein reviewed, they must be considered as encompassing a finding of every fact necessary to support them. When so considered, this judgment includes a finding that none of the production, upon which the gross production tax

was paid for the years 1938 through 1941, both inclusive, came from the 10 acres involved here.

HALLEY, V. C. J., and DAVISON, JOHNSON, WILLIAMS, JACKSON, IRWIN and BERRY, JJ., concur.