**CANEY PRODUCTION COMPANY, a Corporation, Jo Lee and S. C. Canary, Plaintiffs in Error,**

**v.**

**John M. KANE and Corrine Gray Kane, his wife, and Richard Kane and Mary Muder Kane, his wife, Defendants in Error.**

**No. 41140.**

Supreme Court of Oklahoma.

Nov. 21, 1967.

As Amended April 1, 1968.

Rehearing Denied April 2, 1968.

Ames, Daugherty, Bynum, Black, Asha-
branner & Rogers, G. D. Ashabranner
Oklahoma City, Jake Liberman, Caney,
Kan., for plaintiffs in error.

Richard Kane, Bartlesville, for defend-
ants in error.

DAVISON, Justice.

The parties to this appeal occupy the same
relative positions in this court as they did
in the lower court and will be referred to
by their trial court designation of "plain-
tiffs" and "defendants," or by name.

Plaintiffs filed their action in the lower
court to quiet title to the oil, gas and other
minerals in and under two noncon-
tiguous tracts of land of about 20 acres
each, described as the Southwest 9.29 Acres
of Lot 6 and the Northwest 9.39 Acres of
Lot 7 (herein called the "West 20 Acres"),
and the North Half of the Northwest
Quarter of the Southeast Quarter (herein
called the "East 20 Acres"), all in Section
18, Township 29 North, Range 14 East of
the I. M. in Washington County, Oklahoma.
Both non-contiguous tracts of land have
been under one and the same oil and gas
lease since August 2, 1904. Plaintiffs,
Caney Production Company and S. C.
Canary, deraign their title to an oil and gas
leasehold interest in the tracts from the
original lessee, and plaintiff, Jo Lee,
deraigns his interest in the minerals from
the original lessor.

The defendants based their claim of a
superior title to the minerals upon an ad
valorem tax resale deed, dated June 20,

1940, to a predecessor in their claim of title.

Plaintiffs alleged in their petition that the property had always been assessed and taxed as a single taxable unit; that the lease had been continued in force by production of oil from part of the premises for 50 years; that the gross production tax was paid and by reason thereof the ad valorem taxes did not become a lien upon the minerals, and consequently the resale tax deed did not disturb the ownership of the mineral estate.

In their answer and cross petition the defendants alleged in substance, that the oil production was only from the West 20 Acres and there had been no production from the East 20 Acres for many years prior to 1940. Defendants conceded plaintiffs were owners of the minerals and mineral rights in and under the West 20 Acres, but alleged the defendants were owners of the surface of both tracts and the minerals under the East 20 Acres.

The cause was submitted to the court on an agreed settlement of facts in which it was stipulated, that plaintiffs were the owners of the mineral interests they claimed in the West 20 Acres; that oil had been produced in paying quantities from such tract for about 50 years and the gross production tax paid; that the 1940 resale tax deed *"describes both of the above mentioned tracts of land and that said deed was legally valid and sufficient to create a new and original title in the surface estate to both of the tracts of land above described but that said deed did not disturb the mineral ownership under the first hereinabove described tract of land which is and has been productive of oil during all the years for which said taxes were assessed and sold and which is still productive of oil as above stipulated."* (emphasis ours); that the East 20 Acres "was not productive of oil or other minerals" during, and for several years prior to, the years in which the taxes were assessed and for which the land was sold at the 1940 resale, and "is not presently productive of oil or gas or other minerals;" that the two non-contiguous tracts were jointly assessed for taxation and jointly sold for delinquent taxes.

It will be observed that under this stipulation the parties agreed the resale tax deed was legally valid and that no question was raised as to the validity of the proceedings prior to the issuance of such deed.

The trial court entered judgment quieting plaintiffs' title to all of the mineral estate in the West 20 Acres, and quieting defendants' title to the surface of both tracts and the minerals in the East 20 Acres. The court's findings, insofar as pertinent to this decision, were in substance, that no part of the oil produced from the West 20 Acres, and payment of the gross production tax on oil produced from the West 20 Acres did not exempt the minerals under the East 20 Acres from the lien for ad valorem taxes; and the fact that production on one tract would perpetuate the lease on both tracts was immaterial in deciding the question of whether minerals under the East 20 Acres (non-producing) were subject to the lien of ad valorem taxes, since the lease was a private contract and had nothing to do with the method provided by law for assessment and collection of ad valorem taxes, and the lease on the East 20 Acres was extinguished by the tax deed, the same as a mortgage or any other encumbrance; and that in the absence of any production and payment of gross production tax from the East 20 Acres the minerals under that tract were subject to ad valorem tax lien. The court's finding concludes that the mineral interest (Under the East 20 Acres) was not severed from the surface for purposes of taxation, and the tax deed covered the entire fee simple title and not the surface only.

Plaintiffs' appeal alleges error and seeks reversal of that part of the judgment whereby title to the minerals under the East 20 Acres was quieted in defendants.

From our examination of the parties' trial stipulation and the findings of the lower court, it appears to us that the merit of the plaintiffs' proposition for reversal of the judgment rests in the answer to be given to

the decisive question set forth in paragraph "7" of the stipulation and copied in plaintiffs' brief, as follows:

"* * * Where two non-contiguous tracts of land within the same governmental section have been jointly assessed and sold for taxes, and where both of said non-contiguous tracts were included in one oil and gas lease with production being obtained on one of said tracts prior to and during the years for which said tracts were jointly assessed and sold and gross production taxes paid thereon, did the establishment of production and payment of gross production tax on one of said tracts sever the mineral estate from the surface estate for ad valorem tax purposes as to both of said tracts?"

Plaintiffs contend the answer to this question should be in the affirmative. In reaching the answer to this question it should always be kept clearly in mind that the leased area consists of two non-contiguous tracts. The record does not reflect the extent or distance by which one tract was separated from the other, but only shows that they were both in Section 18 and were non-contiguous.

Plaintiffs' contention that the mineral estate in both tracts was severed from the surface estate, for ad valorem tax purposes, is based on the provisions of our Gross Production Tax Statute. This statute, levying a gross production tax on minerals produced from lands, has existed in our laws in substantially its present form since 1916, and appears as 68 O.S.1961, § 821, now renumbered 68 O.S.Supp.1965, § 1001. Subdivision (a) thereof requires a producer of the oil and gas to file a monthly report showing the location of each mine or oil or gas well, and levies a tax on the gross value of the production. Subdivision (f) thereof provides in part as follows:

"The payment of the taxes herein levied shall be in full, and in lieu of all taxes by the State, counties, cities, towns, · school districts and other municipalities upon any property rights attached to or inherent in the right to said minerals, upon producing leases for the mining * * * for petroleum or other crude oil or other mineral oil, or for natural gas and/or casinghead gas, upon the mineral rights and privileges for the minerals aforesaid belonging or appertaining to land, * * * and also upon the oil, gas, asphalt or ores bearing minerals hereinbefore mentioned during the tax year in which the same is produced, and upon any investment in any of the leases, rights, privileges, minerals or other property hereinbefore in this paragraph mentioned or described; and any interest in the land, other than that herein enumerated, * * shall be assessed and taxed as other property within the taxing district in which such property is situated at the time."

■ Under the above statute and our decisions construing the same it is firmly established that it is the production of oil and gas from the land and the consequent levy of the gross production tax that renders such tax "in full, and in lieu" of ad valorem taxes. If there is no production and consequent levy the minerals are subject to the lien of the ad valorem taxes.

In Jenkins v. Frederick, 208 Okl. 583, 257 P.2d 1058, we held that "oil and gas while lying in the strata of the earth, with no production therefrom, must be taxed as realty to the owner of the land if such land is taxable," and stated:

"A resale tax deed conveys to the purchaser the entire interest and estate in land, including oil and gas rights therein, where oil and gas was not being produced therefrom and gross production tax paid thereon during the years of delinquency in failing to pay ad valorem taxes."

In accord see Knutter v. Smith, Okl., 307 P.2d 137, and Sears v. Randolph, 195 Okl. 200, 156 P.2d 595.

■ Our decisions have just as firmly established that, when oil and gas is being produced from the land with a levy of the gross production tax on such production, there is a severance of the mineral estate for tax purposes and the ad valorem taxes are not a lien upon the mineral estate.

In Meriwether v. Lovett, 166 Okl. 73, 26 P.2d 200, the owners of the mineral estate in land sought and secured an injunction against the issuance of a tax deed that would have conveyed their mineral estate. The decision affirmed the lower court. The decision states:

"The issue presented here is whether the unproduced minerals in the strata of the earth, previously conveyed, and the working interest under the oil and gas leases are subject to the ad valorem taxes assessed against the land itself, separately owned, during a time when oil and gas were being produced from said land and the gross production taxes were being paid on the oil so produced.

\* \* \* \* \* \*

"It is to be noted that the determination of the essential question does not involve a consideration of the non-payment of ad valorem taxes on lands where no production of oil and gas is being had, and consequently no gross production taxes are being paid."

After an examination of the authorities it was held as follows:

"From the expressions above quoted from the Supreme Court of the United States and from the prior decisions of this court, it appears certain that the Legislature has seen fit to classify mineral rights in lands from which oil and gas are being produced as a district classification of property for taxation, not upon an ad valorem basis, but upon the basis of production as a substitute for ad valorem taxes. \* \* \* It therefor saw fit to classify mineral rights in lands, from which production of said minerals are being had, as a classification of property on which the state should exact a tax. \* \* \*"

In McNaughton v. Beattie, 181 Okl. 603, 75 P.2d 400, the owner of the fee title to the land produced oil and paid the gross production tax. While this situation existed the ad valorem taxes became delinquent and a resale tax deed was issued. We held that the tax deed did not convey the mineral estate, on the ground that the mineral estate was severed for tax purposes, with the gross production tax becoming a substitute for an ad valorem tax on the mineral rights as long as oil or gas is being produced in sufficient quantities to warrant payment of such tax. We stated therein as follows:

"It must be clearly understood that this separate taxable estate in the mineral rights exists only during the time when production is obtained from the property and gross production tax levied and paid thereon. \* \* \*"

In Peteet v. Carmichael, 191 Okl. 593, 131 P.2d 767, the owner of an 81.63 acre tract of land executed an oil and gas lease on the entire tract and later sold the east 40 acres. He then (1915) platted 35 acres of the remaining west 41.63 acres into townsite lots and blocks, leaving 6.63 acres as unplatted acreage. The following year (1916) the holder of the oil and gas lease drilled a producing well on the unplatted 6.63 acres, which continued to produce in sufficient quantities to warrant payment of the gross production tax. Numerous lots were sold and when the ad valorem taxes were not paid these lots were sold to the county at tax resales. Plaintiff acquired the title thereby vested in the county and sued to quiet title against the prior owners of the royalty interest in the oil and gas, contending the resale tax deeds to the county conveyed this mineral interest. Defendant royalty owners appealed from the quiet title judgment rendered against them.

In the appeal in the Peteet case the plaintiff presented the proposition that each town lot was a distinct taxable unit, and contended the gross production tax is levied upon oil actually produced from a taxable unit as defined by our statute providing for assessment and levy of ad valorem taxes, without regard to the territorial limits of the real estate covered by the oil and gas lease under which it is discovered. In answer to this proposition the decision stated the gross production tax statute took no cognizance of separate taxable units

carved out of the surface rights of the original tract subsequent to the execution of the lease, and that the lease under consideration covered but a single taxable unit as defined by the statutes. Upon consideration of the Meriwether and Mc-Naughton cases, supra, the decision held that under the circumstances, where the oil and gas lease covered a single tract of land, the discovery and production of oil from any portion of the lands and levy of the gross production tax thereon operated to sever the minerals from the whole estate for the purpose of taxation and prevented the resale tax deeds from conveying the mineral rights therein. It further stated:

"* * * It is not the payment of the tax that classifies the property for the purpose of taxation, but the production of the minerals from the land and the levying of a tax thereon by the statute above referred to."

■ It is our opinion that the last three cited decisions have common factual characteristics, which, when considered with the legal conclusions therein expressed and applied to them, are determinative of the parties' stipulated proposition, supra. In the Meriwether case, supra, the opinion does not reflect that the lands covered by the two leases were contiguous (the record therein does reflect they were), but the opinion states oil and gas were being produced on "said lands" in paying quantities. In the McNaughton case, supra, oil was being produced from a single (contiguous) tract of land. In the Peteet case, supra, the oil and gas lease was on a single tract of land, and the later subdivided portions were within the part of the land on which there was a producing well. In these three cases it was stated and reiterated that it was the production of oil and gas from the land and the levy of the gross production tax thereon that severed the mineral estate from the whole estate for taxation purposes and removed the mineral estate from the lien of ad valorem taxes. This separate taxable estate in the mineral rights exists only during the time when production

is obtained from the property and gross production tax levied thereon.

As heretofore stated, the parties in the present case stipulated that the non-contiguous East 20 Acres was not productive of oil or gas for several years prior to and during the years for which the taxes were assessed and sold under the resale tax deed and was not presently productive of oil or gas. In other words, there was nothing to show there was production of oil or gas from the non-contiguous East 20 Acres and levy of the gross production tax thereon. In this state of the record we cannot say the finding of the lower court, that no part of the oil produced from the West 20 Acres could be considered as having been derived from the East 20 Acres, is without support in the record.

■ It was stipulated by the parties that both non-contiguous tracts were jointly valued and assessed by the County Assessor for ad valorem tax purposes. However, we fail to see how the method and procedure used in the assessment and collection of such taxes would eliminate the need for production from the non-contiguous land and levy of the gross production tax as a pre-requisite to severance of the mineral estate for taxation purposes.

■ It is our conclusion that under the present circumstances the mineral estate in the non-contiguous East 20 Acres was not severed from the whole estate for taxation purposes and remained subject to the lien of the ad valorem taxes and was conveyed by the 1940 resale tax deed. If this court were to reach the opposite conclusion, then the result would be that any number of non-contiguous tracts, either within the same section of land or in different sections, could be incorporated in a single oil and gas lease and production of oil or gas in paying quantities from only one would in and of itself be effective to sever the mineral estate in all tracts for taxation purposes. We do not find anything in the Gross Production Tax Statute, supra, or in the authorities, from which we

can conclude that such result was intended by the Legislature.

Both parties rely on Kolb v. Carnes, Okl., 391 P.2d 813. That case presented the question of whether the minerals in a 10 acre tract of land were, or were not, included in the title conveyed by a resale tax deed. The decision held the minerals were conveyed by the deed. There the owner gave an oil and gas lease on the 10 acre tract and other land. Wells were drilled and oil was continuously produced from the other land, but no wells were ever drilled on the 10 acres. Thereafter, assignees of the lease released the same as to the 10 acres. After such release the ad valorem taxes became delinquent on a part of the originally leased property, including the 10 acres, and the resale tax deed was issued. For an understanding of our discussion in the decision, it should be clearly understood that we were there dealing with a 10 acre tract which was not included in a lease with other producing property and on which there was no development and production during the time the ad valorem taxes became delinquent and the resale tax deed was issued. In such situation the 10 acres had a status analogous to that occupied by the land in the McNaughton case, supra, before production of oil was secured. However, the tract in the McNaughton case began and produced oil during the period of tax delinquency, whereas, the 10 acres never produced oil during such period. In the Kolb case no issue or proposition was presented relative to the effect of including non-contiguous tracts in an oil and gas lease, and consequently the decision is not determinative of such proposition in the present appeal.

Plaintiffs also cite Gypsy Oil Co. v. Cover, 78 Okl. 158, 189 P. 540, 11 A.L.R. 129. In that case two non-contiguous tracts were included in an oil and gas lease, and production was secured by one tract, and the royalties were paid and accepted by the owners of the land. The decision held that under such circumstances and under the provisions of the lease the production from one tract perpetuated the lease as to the other tract. No question was raised or determined therein as to whether the perpetuation of the lease would result in severance of the minerals for taxation purposes in the event of a resale tax deed on the non-producing non-contiguous tract.

The question involving tracts of land which have been legally communitized is not before us and the decision herein is not intended to cover such situations.

The judgment of the trial court is affirmed on the grounds and for the reasons herein stated.

All the Justices concur.